[Civ. No. 1431. First Appellate District.—September 21, 1914.]

## J. W. McEVERS, Petitioner, v. THOMAS F. BOYLE, as Auditor of the City and County of San Francisco, Defendant.

PUBLIC OFFICER—PREVENTION OF PERFORMANCE OF DUTIES BY INJUNCTION—VACANCY IN OFFICE.—A vacancy in the office of city sealer of weights and measures does not result, under subdivision 7 of section 996 of the Political Code, by his ceasing to perform all official duties for over three months, where, during that period, he is restrained from performing any official act by an injunction, and another action is pending in which the validity of the ordinance creating the office is upheld by the supreme court on appeal. The cessation of duties which will create a vacancy under the statute must be voluntary.

Id.—Abandonment of Office—Surrender of Paraphernalia.—The fact that, during the pendency of the injunction, such officer surrenders the paraphernalia of the office to the city on demand and on being informed that the city will no longer pay the rental of his office, does not show an abandonment of the office. Neither does a letter from the officer to the mayor, referring to the "re-establishment" of the office upon the dissolution of the injunction.

Id.—Validity of Ordinance Creating Office—Determination by Court—Failure of Officer to Resume Duties.—The failure of the officer to take up the duties of his office as soon as the announcement of the decision by the supreme court in the case upholding the validity of the ordinance creating the office, does not show an intention on his part to consider the office vacant.

Id.—Mandamus to Pay Salary—Existence of Fund.—In *mandamus* proceedings to compel the city auditor to issue warrants for the salary of such officer and his deputies for the restrained period, it is immaterial whether there are funds in the treasury applicable to the payment of the warrants.

Id.—Specific Fund for Payment of Salary—Merger in General Fund.—If money appropriated to pay such salaries has been merged in the general fund at the end of the fiscal year, it will be presumed that the specific fund still exists and is applicable to the payment of the warrants.

APPLICATION for a Writ of Mandamus directed to the Auditor of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Pemberton & Pemberton, for Petitioner.

Percy V. Long, City Attorney, and Harry G. McKannay, Assistant City Attorney, for Defendant.

RICHARDS, J.—This is an original application to this court for a writ of *mandamus* directed to the defendant, as auditor of the city and county of San Francisco, commanding him to issue to the petitioner warrants to pay his official salary as deputy sealer of weights and measures, and those of certain other deputies who had assigned to him their claims therefor.

It being necessary to take testimony on the matters at issue, a reference was made to John J. O'Toole, Esq., for that purpose, and with instructions to report findings and conclusions. This has been done, the referee's findings being in favor of the

petitioner; and concluding that the writ of *mandamus* prayed for should issue.

The matter now being submitted to this court for decision, a careful examination of the testimony taken and the briefs filed convinces us that the referee's findings and conclusions are a correct determination of the matter in controversy; and we adopt as the opinion of this court the referee's opinion filed with his findings, and which is as follows:

"The above entitled matter being an original proceeding, and the following questions of fact, i. e., (1) Did the petitioner and his assignors abandon their offices. (2) Are there funds in the treasury of the city and county of San Francisco applicable to the demands of petitioner and his assignors— having arisen, and the matter having been submitted to the undersigned as referee to determine said facts, and such evidence as the parties to this action desired to offer having been taken before the referee, the matter was submitted for his decision.

"From the testimony taken and the evidence introduced it appears that Charles G. Johnson was during the month of November, 1911, and under and by virtue of an ordinance passed by the board of supervisors of the city and county of San Francisco, appointed sealer of weights and measures for said city and county, he qualified as such during said month and entered upon the discharge of his duties, and appointed petitioner herein his chief deputy, and certain of petitioner's assignors, deputy sealers, and one Rowe stenographer, all according to the terms of the ordinance. The deputies and stenographer all qualified and during the month of November, 1911, entered upon the discharge of their respective duties. An office was furnished to the sealer by the proper authorities and he was provided with certain paraphernalia and equipment necessary for the discharge of his official duties. Shortly after the appointment and qualification of the sealer and his deputies, an action was instituted in the superior court of the city and county of San Francisco, asking for an injunction restraining the sealer and his deputies from performing any official act under and pursuant to the ordinance authorizing their appointment, commanding the board of supervisors of the city and county of San Francisco to refrain from passing any demand or incurring any expense against the city pursuant to the provisions of the ordinance, and commanding the

auditor not to audit, and the treasurer not to pay any claim
against the treasury of the city and county for any expense
incurred in carrying out or attempting to carry out any of
the provisions of the act. A temporary restraining order was
granted in this action, and on or about the 8th day of
February, 1912, the court announced its decision to the effect
that a writ of injunction should issue as prayed for. While
the judgment in this action was appealed from, the appeal was
never determined, but it is conceded that *Scott* v. *Boyle,*
decided December 12, 1912, reported at 164 Cal. 321, [128
Pac. 941], determined that the ordinance in question was valid
and that the appeal in the injunction case would have been
determined against the plaintiffs in that action.

"From the date of the announcement of the decision in the
injunction case, the sealer, his deputies and employees obeyed
the injunction, in this that they performed no official act
under the ordinance. On February 8th, 1912, the sealer in a
letter addressed to the mayor of the city and county asked
that his deputies and employees be given a leave of absence
without prejudice to their positions and without pay until
the supreme court had passed upon the validity of the ordi-
nance, and he himself offered to continue in his position with-
out pay. On April 8th, 1912, the supervisors of the city and
county denied the request. On February 19th, 1912, the
board of supervisors by resolution directed its clerk to close
the office which had been provided for the sealer, and to take
possession of the paraphernalia. The passage of the resolu-
tion was communicated to the sealer, and on the 21st day of
February, 1912, he packed and delivered to the representative
of the board of supervisors, upon the demand of the latter,
the paraphernalia of the office. And on the same day the
representative of the board notified the owner of the building
in which the sealer's office was situated, that the city would
no longer pay rental for said office. Hereupon the sealer
established himself at a new location, where his deputies and
employees reported to him daily, and where they all, according
to their uncontradicted testimony, at least made an attempt to
perform some of the duties of the office, but according to their
own testimony, most of their acts were unofficial. However,
they took no other employment and received no compensation
or salary from any other source. They filed their demands

in due form monthly with the auditor. This continued from February 21st, 1912, until December 31st of the same year.

"Counsel for defendant contends that the facts show that the office held by the sealer and his deputies became vacant on May 21st, 1912, pursuant to the provisions of section 996 of the Political Code, which provides 'That an office becomes vacant on the happening of either of the following events before the expiration of term': Subd. 7. 'His ceasing to discharge the duties of his office for the period of three consecutive months, except when prevented by sickness, or when absent from the state by permission of the legislature,' counsel basing his argument on the fact that the sealer voluntarily surrendered all of the paraphernalia to the representative of the board of supervisors, and thereafter performed no official act. The referee is of the opinion that the argument is not sound; it is admitted that the sealer and his deputies and employees performed their duties as provided by the statute up to the time they were restrained from so doing by the injunction issued by the superior court; this injunction for all practical purposes remained in force until December 12th, 1912, when the validity of the ordinance was determined by the supreme court in another action, but in reality the injunction was never dissolved and actually the sealer and his deputies were restrained from performing their duties until the date of their resignation. Under the circumstances, I am of the opinion that their acts, or rather their failure to act, does not bring them within the provisions of subdivision 7, section 996 of the Political Code. The ceasing to perform the duties, etc., must be a voluntary "ceasing. One can well comprehend what would have been the result of any attempt on the part of the sealer or his employees to perform any of the duties of their respective offices while the injunction was in force; undoubtedly on their attempt being called to the attention of the court, the court would have placed them where the attempt could not be renewed and thereby more effectively, than by mere command, prevented a repetition of the attempt. Therefore, as long as the injunction was in force, it was their duty to obey it, and their doing so cannot be said to be such a ceasing to perform their duties as would bring them within the provisions of the section. See *Bergerow* v. *Parker,* 4 Cal. App. 169, [87 Pac. 248], where it is said:

" 'The finding of the court that "the office became vacant and the plaintiff ceased to be such constable on the fifteenth day of October, 1900," is based upon the provision of section 996 (7) of the Political Code, that an office becomes vacant by the "ceasing of the incumbent to discharge the duties of his office for the period of three consecutive months except when prevented by sickness, or when absent from the state by permission of the legislature;" and it is urged that inasmuch as the appellant was continuously held in confinement at San Jose for a period of more than three consecutive months from the date of his arrest, he of necessity ceased to discharge the duties of his office during that period, and therefore at the expiration of three months from his arrest, his office *ipso facto* became vacant. We are of the opinion, however, that this is not a proper construction to be given to this provision of the section, but that, in order to create a vacancy in the office, the cessation to discharge its duties for the designated period must be the voluntary act of the incumbent. The section provides for many of the contingencies upon which a vacancy will be created, and it will be noted that with the exception of the death of the incumbent each of these contingencies contemplates some proceeding against him, in which he will have an opportunity to controvert the ground on which the vacancy is claimed, or some act initiated by himself and voluntarily carried into effect. It is in harmony with the other provisions of the section that, in order to create a vacancy in the office, the cessation to discharge its duties for the period of three consecutive months must have been voluntary on his part, and we hold that such construction must be given to the provision." See, also, *Ward* v. *Marshall*, 96 Cal. 155, [31 Am. St. Rep. 198, 30 Pac. 1113], where the court said:

" 'The fact that during the time of his suspension from office its duties were performed by a person properly appointed for that purpose, and that the county has paid him the salary, does not affect the right of plaintiff to recover. He was, without fault on his part and against his consent, released from the performance of the duties of such office for the period named. (*Fitzsimmons* v. *City of Brooklyn,* 102 N. Y. 536, [55 Am. Rep. 835, 7 N. E. 787] ; *Andrews* v. *Portland,* 79 Me. 485, [10 Am. St. Rep. 280, [10 Atl. 458]), see, also, *Johnson* v. *Brooks,* 139 Ga. 787, [78 S. E. 37], where the court said:

"'Section 264 of the Civil Code provides "that all offices in this state are vacated by abandoning the office and ceasing to perform the duties or either."—This language of the code means the willful or voluntary forsaking or relinquishment of the office, and not a failure to discharge its duties by reason of the acquiescence in the validity of a statute until it is judicially determined to be nugatory.'

"Counsel for defendant lays particular stress upon the fact that the sealer voluntarily surrendered the paraphernalia of his office. I am of the opinion that no particular importance is to be attached to this act. The sealer was restrained from making use of the paraphernalia, and the city had notified him that it would no longer pay rental for his office, and it is not at all unreasonable that he presumed that when the paraphernalia could be used, he could have obtained it.

"Counsel for defendant also quotes in his brief portions of a letter from the sealer to the mayor relative to the bureau of weights and measures, referring to its 're-establishment.' I fail to see that this particular correspondence or any of the correspondence which is in evidence shows any intention to abandon the office or any ceasing to perform its duties other than had already taken place by reason of the injunction. The sealer uses the word 're-establishment' in his letter and counsel for defendant has argued from this that he considered the office abandoned. · I cannot agree with him, other portions of the letter show that such was not his intention, and furthermore, the word re-establishment may have been used advisedly, for certainly the office was in need of re-establishment as soon as the injunction which had practically abolished it, would be dissolved.

"Counsel for defendant also argues that the failure of the sealer and his deputies to take up the duties of his office as soon as the decision in *Scott* v. *Boyle* was announced shows that he considered his office vacant. I am of the opinion that the argument is not sound. The judgment of the supreme court in the Scott case did not become final until thirty days after its rendition (Dec. 12, 1912), furthermore, the injunction against the sealer was still in force, and still further, a failure to perform the duties of the office from Dec. 12 to Dec. 31st (the date of the resignation of the sealer) would not constitute a vacancy in the office, for the ceasing to perform the duties of the office must continue for three consecu-

tive months. Counsel for defendant cites in support of his contention that a vacancy occurred in the office, *People ex rel. McGarvey* v. *Hartwell,* 67 Cal. 11, [6 Pac. 873]. I am of the opinion that the case is not in point with the one at bar. In the case cited, the claimant could at any time during the two years, have demanded his office or at least made an attempt to perform its duties. In the case at bar the sealer and his deputies were restrained from performing their duties. In that case the court said: 'Public office is held upon the implied condition of diligently and faithfully executing the duties belonging to it and a *willful* refusal to perform the duties works a forfeiture.' In the case at bar, it cannot be said that the refusal to perform the duties was willful, for the injunction prevented their performance. In view of the injunction and in view of the fact that the sealer and his deputies at least made an effort to perform the duties of their respective offices, I am of the opinion that no vacancy occurred in the office and that they held office until the date of their resignation.

"The only other point to consider is, are there funds in the treasury of the city and county applicable to the warrants which petitioner demands?

"The referee is of the opinion that for the purpose of this inquiry it is immaterial whether there are or not. The proceeding now before the court is a proceeding to compel the auditor to issue his warrant, and the only question pertinent to this inquiry is, is the petitioner entitled to the warrant; if he is, it should be issued. See *Ott Hardware Co.* v. *Davis,* 165 Cal. 795, 799, 800, [134 Pac. 973].

"But should the question as to whether there is a specific fund upon which these warrants can be drawn be a material one, I would have to determine that the fund exists. Some eight thousand dollars was appropriated to pay the salaries and expenses of the sealer and his deputies. The evidence shows that this fund was not drawn upon, but that it was merged in the fund known as the general fund at the end of the fiscal year 1912. If the general fund has been enriched by this specific fund, it is to be presumed that this fund still exists and is applicable to the payment of the warrants in question.

"To conclude, the referee is of the opinion that his award should be in favor of the petitioner in both the questions of

fact which were submitted to him, and findings and conclusions may be prepared accordingly.''

It is therefore ordered that the peremptory writ of *mandamus* issue from this court to the defendant, as auditor of the city and county of San Francisco, commanding him to deliver to the petitioner warrants for the salary of himself and his assignors due on May 1, 1912, and on the first of each and every month thereafter to and including January 1, 1913, aggregating the sum of $6212.

Lennon, P. J., and Kerrigan, J., concurred.