BECKER, Appellant, vs. GREEN COUNTY, Respondent.

*September 22, 1921—February 7, 1922.*

*Officers: Ouster by conviction of infamous crime: Recovery of sal-*
*ary on reversal of judgment: Statutes: Revision: Consolida-*
*tion: Statute enacted after conviction: Questions not litigated:*
*Waiver.*

1. A public officer who had been· erroneously convicted of a crime
   which works an ouster from his office cannot under the com-
   mon law, upon reversal of such erroneous judgment, recover
   salary for the time during which he was excluded from the
   office, his rights of recovery, if any, being by virtue of statu-
   tory law.

2. An "infamous crime" within the meaning of sec. 3, art. XIII,
   Const., making a person convicted thereof ineligible to hold
   public office, and sec. 17.02, Stats. 1917, providing for a va-
   cancy in office upon conviction of an officer of an "infa-
   mous crime," is a crime punishable by imprisonment in the
   state prison.

3. A county judge convicted under the federal espionage act of
   June 15, 1917, and thereby disqualified from holding office by
   sec. 3, art. XIII, Const., and ousted from his office by sec.
   17.02, Stats. 1917, was not, on reversal of such conviction,
   following stay of sentence, entitled to salary for the period of
   time he had been so ousted, under sec. 4935, providing that
   the office of a public officer who had been convicted and sen-
   tenced to state prison shall be deemed vacated from the time
   of commitment to prison and that the officer, on reversal of
   the judgment, shall be restored to office with all its rights and
   emoluments.

4. A revision of the statutes is more than a restatement of the sub-
   stance thereof in different language, and implies ·their re-
   examination and may constitute a restatement of the law in
   a corrected or improved form, in which case the revision may
   be with or without material change, and is substituted for and
   displaces and repeals the former law as it stood relating to the
   subjects within its purview.

5. Statutes creating new rights are not construed as applying to
   past wrongs unless plainly so intended, and in case of doubt
   or ambiguity they are construed as prospective only.

6. Sec. 14, ch. 362, Laws 1919, providing for the consolidation of
   sec. 4935, Stats. 1917, with other sections to constitute sub.
   (5), sec. 17.03, which took effect after plaintiff was sentenced
   but before judgment of conviction was reversed, and pro-

viding also for the restoration to office of a convicted public officer on reversal of judgment, does not entitle an officer who has been ousted from office by conviction under laws then existing to restoration of office, the legislature having no more right to restore an ousted officer than to provide for the induction of an officer into office in the first instance.

*On rehearing:*

7. The question whether plaintiff was entitled to salary for the period he served as county judge after his conviction and before his successor qualified and assumed the office, not having been presented to the court during the trial, cannot be urged as a ground for a new trial or for a reversal of the judgment; but, without expressing an opinion on the question, it is *ordered* that the judgment in the case be without prejudice to plaintiff's right in respect to the salary for such period and will not be *res adjudicata* in proceedings instituted for a recovery thereof.

ESCHWEILER and DOERFLER, JJ., dissent.

APPEAL from a judgment of the circuit court for Green county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Action by plaintiff to recover his salary as county judge of *Green County* during the time he was suspended from that office by reason of his erroneous conviction under the federal espionage act. On the 6th day of August, 1918, the plaintiff was the county judge of *Green County* for the term ending January 5, 1920. On that date he was convicted in the United States court for the Western district of Wisconsin of a violation of the espionage act (Act of Congress approved June 15, 1917) and sentenced to imprisonment for three years. Execution of said sentence was stayed pending prosecution of a writ of error to the United States circuit court of appeals. In October, 1920, and after the expiration of the term of office for which plaintiff had been elected, the circuit court of appeals reversed the judgment and conviction, holding that as a matter of law the evidence did not justify conviction of plaintiff. Plaintiff was at no time committed to prison under said judgment and conviction. On September 19, 1918, the governor of the state of Wisconsin appointed a successor to said *Becker*

to fill the vacancy in said office of county judge, caused by the conviction of said plaintiff as aforesaid. This action is brought to recover his salary as county judge from the time he was ousted from the office until the end of the term. The trial court rendered judgment in favor of the defendant, from which the plaintiff brings this appeal.

For the appellant there was a brief by *Wheeler & Witte* of Milwaukee, and oral argument by *Lyman G. Wheeler*.

For the respondent there was a brief by *H. N. B. Caradine* of Monroe and *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *Mr. H. L. Butler, Mr. R. M. Stroud,* and *Mr. Caradine*.

The following opinion was filed October 18, 1921:

OWEN, J. No mistake-proof system of administering justice has yet been devised, nor is it likely to be as long as the element of human judgment enters into the scheme. The innocent will be punished and the guilty will escape. We contemplate this fact with regret, but nevertheless the fact exists. No one is in a position to realize this better than the plaintiff himself, who during many years has occupied an honorable and prominent position in the judicial system of this state. Although he has suffered most grievously by reason of the error committed, he has no doubt faced his misfortune as philosophically as one may be expected to do who smarts under the sense of grievous wrong.

The question now presented is whether the written law of this state provides that a public officer who has been erroneously convicted of crime which works an ouster from his office may, upon a reversal of such erroneous judgment of conviction, recover the salary during the time he was so excluded therefrom. If such recovery can be had it must depend upon statutory law, as it is not recoverable under any principle of the common law. This court has held, in harmony with the great weight of judicial authority, that a *de*

*jure* officer cannot draw from the public treasury a salary attached to the office that has been paid to a *de facto* officer who wrongfully excluded the *de jure* officer therefrom. *Clausen v. Fond du Lac Co.* 168 Wis. 432, 170 N. W. 287. This is on the theory that the public ought not to be compelled to pay two salaries, and that as the disbursing officers ought not to be compelled to decide for the municipality which is rightfully entitled thereto, payment by them to the one in possession of the office should be held to discharge the public from further responsibility in the matter.

Upon the oral argument counsel for appellant cited to our attention the cases of *Fitzsimmons v. Brooklyn,* 102 N. Y. 536, 7 N. E. 787; *Newberry v. Smith,* 157 Mich. 181, 121 N. W. 746; *Ward v. Marshall,* 96 Cal. 155, 30 Pac. 1113; *McEvers v. Boyle,* 25 Cal. App. 476, 144 Pac. 308, a consideration of which, he thought, disclosed the error of his former assumption that the right of appellant to recover must be referred to statutory law. In the first two cases city police officers were removed, in form, by administrative officers vested with authority to remove police officers under certain circumstances, which pretended removal had been adjudged void. It was held that the police officers were entitled to recover their salaries during the period of their unlawful suspension. In *Ward v. Marshall,* 96 Cal. 155, 30 Pac. 1113, the plaintiff, a justice of the peace, was convicted of wilful misconduct in office and, as a part of the judgment of conviction, was removed from his office, which judgment was reversed upon appeal. It was held that he was entitled to the salary of his office during the time he was suspended from the performance of his duties by the erroneous judgment of the trial court. In *McEvers v. Boyle,* 25 Cal. App. 476, 144 Pac. 308, it was held that one who has been appointed to the office of sealer of weights and measures created by an ordinance of the city of San Francisco was entitled to the salary of the office during a period in which he was prevented from performing the duties thereof

to test the constitutionality of the ordinance.    We think the
present case is clearly distinguishable from those cases.    In
those cases there never was a lawful removal, while in this
case, as will presently appear, the removal was lawful, even
though erroneous.    The removal in this case being lawful,
no reason appears for compelling a double payment of
salary from the public treasury by that branch of the law
which denies to a *de jure* officer the salary which has been
paid to a *de facto* officer during the time he has been un-
lawfully excluded from office.    We therefore think that
the original impression of counsel to the effect that statu-
tory law must be found to entitle plaintiff to a recovery was
in accordance with the law on the subject.

Sec. 3, art. XIII, of the constitution provides that "no
person convicted of any infamous crime in any court within
the United States . . . shall be eligible to any office of trust,
profit, or honor in this state."    By sec. 2, ch. 11, Revised
Statutes of 1849, it was provided that "Every office shall be-
come vacant on the happening of either of the following
events before the expiration of the term of such office:  . . .
5. His conviction of any infamous crime, or of any offense
involving a violation of his official oath."    This provision
has continued in the statutes without change until 1917, and
is found as a part of sec. 17.02 of the statutes of that year.
The constitutional provision disqualified the plaintiff from
further holding the office of county judge, and the statutory
provision referred to expressly provided that his office
should become vacant upon his conviction of any infamous
crime.    We have no doubt that the crime of which he was
convicted was infamous within the meaning of that term
as used in the constitution as well as the statute.    While
there has been much debate as to what constitutes an in-
famous crime, we think, by the great consensus of authority
upon the subject, it is now deemed to mean as here used—
a crime punishable by imprisonment in the state prison.
12 Cyc. 135; Words & Phrases, 3573 *et seq.*    While the pro-

vision already referred to gave rise to a vacancy in the office of county judge of *Green County* upon the conviction of plaintiff, no provision is made for restoration to office, or payment of the salary thereof, in case of a reversal of the judgment of conviction. For the accomplishment of that purpose plaintiff relies upon the provisions of sec. 4935 of the Statutes of 1917, which are as follows:

"Whenever any convict sentenced by any court of this state or of the United States to be punished by imprisonment in the state prison shall, at the time of conviction and sentence, hold any office under the constitution and laws of this state such office shall be deemed vacated from the time of his commitment to said prison; but if the judgment against said convict shall be reversed on a writ of error he shall be restored to office, with all its rights and emoluments; but if pardoned he shall not by reason thereof be restored to office."

In passing, it may be remarked that this statutory provision was enacted as a part of ch. 477 of the Laws of 1852, entitled "An act providing more fully for the organization of the state prison," and that its place in the statutes from that time to this has been in the chapter relating to the management of the state prison. Much thought and reflection has not enabled us to divine the reason which prompted the legislature to provide that an office shall be deemed vacated from the time of the incumbent's commitment to prison when it was already provided not only in the constitution but in the enactments of the legislature that such vacancy should occur upon conviction, and we feel that further speculation will be neither profitable nor satisfying. We have to determine whether this statute entitles plaintiff to his salary for the unexpired portion of his term of office from which he was excluded by reason of his conviction.

It is plain that if the judgment against a convict in the state prison shall be reversed on writ of error "he shall be restored to office, with all its rights and emoluments." Does this statute apply to plaintiff's situation? He was never committed to the state prison. This section never

operated to oust him from office.    He was not within the
class of persons therein dealt with.    Note that the section
contains two features: the first works a forfeiture of office;
the second, a restoration.    This section did not work a for-
feiture of plaintiff's office.    Can it be said to work a resto-
ration?    It seems plain that the class affected by the resto-
rative provision is identical with the class affected by the
forfeiture provision, and that no one who does not fall
within the condemnation of the statute is entitled to its
privileges.    We come quite clearly to the conclusion, there-
fore, that the plaintiff did not fall within the class dealt with
in this statutory provision, and that his right to recover his
salary finds no justification therein.

This conclusion renders it unnecessary for us to discuss
a further vexing question that would be presented if this
provision were held to apply to plaintiff, and that is whether
it entitled him to the salary of the office during the time when
he did not perform the duties thereof.    That such was the
legislative intent is far from being clear.

There now remains to be considered another legislative
act upon which plaintiff relies for a right of recovery.    Ch.
362 of the Laws of 1919, according to its title, was "An act
to renumber and revise the sections of chapter 17 of the
statutes, relating to resignations, vacancies and removals
from office; to assemble therein pertinent local provisions
scattered throughout the statutes; to remove inconsistencies
and conflicts in and to harmonize sections and provisions of
the statutes; to renumber sections and subsections and to
amend other sections and subsections therein named from
which pertinent local provisions have been removed for con-
solidation into chapter 17; and generally to consolidate, re-
vise and provide uniform provisions relating to resignations
and removals from and vacancies in offices of the state,
counties, towns, and of cities, villages and school districts."
By that act sec. 17.02, above referred to, was renumbered
and made sec. 17.03, and sec. 14 of the act provided:

"Subsection (5) of new section 17.03 and sections 4507

and 4935 of the statutes are consolidated as subsection (5) of said new section 17.03 and are revised to read: (17.03) (5) His conviction by a state or United States court of and sentence for treason, felony or other crime of whatsoever nature punishable by imprisonment in any jail or prison for one year or more, or his conviction by any such court of and sentence for any offense involving a violation of his official oath, in either case whether or not sentenced to imprisonment. A vacancy so created shall in no case be affected by a stay of execution of judgment. Reversal of the judgment against such officer shall forthwith restore him to office, if the term for which he was elected or appointed has not expired, but, in any event, shall entitle him to the emoluments of the office for all the time he would have served therein had he not been so convicted and sentenced; but pardon shall not restore him to office or entitle him to any of the emoluments thereof."

It will be seen that the provisions we have had under consideration were therein brought together, consolidated, and made a part of the chapter relating to resignations, vacancies, and removals from office. If that statute had existed at the time of plaintiff's conviction it would undoubtedly have entitled him to the salary which he now claims.

Upon the argument the writer queried whether this enactment might not be construed as a legislative interpretation of the then existing law, but a consideration of the act seems to negative such a purpose. In the first place, it says that three separate sections of the statutes are consolidated and revised to read. A revision of the statutes is something more than a restatement of the substance thereof in different language.

"Revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it the legislature say the same thing, in effect, as when a particular section is amended by the words 'so as to read as follows.' The revision is a substitute. It displaces and repeals the former law as it stood relating to the subjects

within its purview. . . . The purport of the numerous cases cited . . . is that where a statute is revised, or a series of acts on the same subject are revised and consolidated into one, all parts and provisions of the former act or acts that are omitted from the revised act are repealed." 1 Sutherland, Stat. Constr. (Lewis' ed.) §§ 269, 270; *Pratt Institute v. New York,* 183 N. Y. 151, 75 N. E. 1119.

Furthermore, that a change in the existing law was intended is manifest from the very first sentence of the section. Original section 17.03 declared a vacancy in the office when the incumbent should be convicted of an infamous crime. As re-enacted it provides for a vacancy in the office if he shall be convicted of any crime punishable by imprisonment in any jail for one year or more. A crime so punishable is not an infamous crime as that term is used in the constitutional provision or in the original sec. 17.03. Even if it should be held that within the contemplation of the constitutional, or former statutory, provision under consideration the sale of watered milk, for which the statute denounces a penalty of imprisonment in the county jail not more than thirty days, should be regarded as an infamous crime, as was held in *Geary v. Bennett,* 53 Wis. 444, 10 N. W. 602 (a slander case), still the re-enactment of sub. (5) indicates a clear change in the law upon this subject, because it does not provide for forfeiture of office unless the penalty provided is imprisonment in jail for at least a year. So that sec. 14, ch. 362, of the Laws of 1919 must be construed as a re-enactment, and not a mere continuance, of existing law.

We now come to the question of whether this law, which became operative June 20, 1920, before the reversal of the judgment of conviction and after the expiration of plaintiff's term of office, operated to vest in him a right to the salary which he claims. At the time of plaintiff's conviction he was vested with no right of restoration or recovery of salary in the event of the reversal of the judgment of conviction

upon appeal. No existing law provided therefor. The wrong which plaintiff sustained was inflicted at the time of his conviction. Statutes creating new rights are not con-' strued as applying to past wrongs unless plainly so intended. *Keeley v. G. N. R. Co.* 139 Wis. 448, 121 N. W. 167; *Quinn v. C., M. & St. P. R. Co.* 141 Wis. 497, 124 N. W. 653. In case of doubt or ambiguity they are construed as prospective only. *Ibid.* The revision we are considering is plainly prospective in its terms. It must be construed as applying only to public officers convicted of one of the offenses enumerated therein after its enactment. Furthermore, it was not within the power of the legislature to make the restorative features of the law applicable to plaintiff. It must be borne in mind that he was effectually divested of any right or title to the office. His status with reference to the office was fixed at the time of his conviction. Thenceforth he was a stranger thereto, as much as any other elector of *Green County.* A successor was lawfully in possession of the office. The legislature could no more restore the plaintiff to the office than it could induct therein one who had never held the same. Such offices must be filled either by election or appointment. They cannot be filled by legislative action. The impotency of the legislature to restore plaintiff to his office is an additional reason for not construing the law so as to vest in him the right to recover the unpaid salary.

We are not insensible to the justice of the law as it now exists. This law, with sec. 3203a, Stats., indicates a purpose of society, speaking through its legislature, to assume responsibility for its wrongs inflicted upon the individual members thereof somewhat commensurate to the liability imposed upon individuals responsible for wrongs inflicted upon others. It is to be regretted that the legislature did not act in time to make the law available to plaintiff, although the recognition by society of its duties and respon-

sibilities, as indicated by the act in question, is encouraging and commendable.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*).    The somewhat anomalous position and provisions of sec. 4935, Stats., as it stood prior to 1919 is commented upon in the majority opinion.

I agree with the view that that section as it stood at the time of plaintiff's conviction did not of itself work a forfeiture of office, that being effected by then sec. 17.02, Stats. Therefore said sec. 4935, Stats., as it stood all those years must have been intended to refer to persons whose right to office was forfeited under sec. 3, art. XIII, Const., and under sec. 17.02, or else to none at all.    To give the reasonable construction to it and to which such beneficial statute is entitled, it would have to be held that it was intended to benefit those who so forfeited office by conviction rather than by a subsequent commitment; the statute therefore could not, in this essential, be literally followed.

Furthermore, its evident purpose was the giving to such particular class of unfortunate victims of a miscarriage of justice who had been unlawfully deprived, through the mistaken act of the sovereign, of the right to continue to hold and enjoy an office given under the laws of the sovereign, compensation or damages for such deprivation and measuring the amount thereof by the rate of the salary fixed for such office.

That the salary was considered as something over and above, or separate and apart from, the office itself is quite manifest, because otherwise the following quoted words from sec. 4935, Stats., where, after providing for restoration to office, it also says, "with all its rights and emoluments," were rank surplusage, for plainly restoration to office would of itself and without further proviso carry with it, as a matter of right and law, the prescribed compensation so long as the office be further occupied and services ren-

dered therein. Such proviso, therefore, must be given weight and meaning in the construction of the entire statute. Such conclusion is further strengthened by consideration of ch. 362, Laws 1919. That, it is conceded, was a bill proposed by the revisor of statutes and must be considered in the light of the presumption that arises from the plainly prescribed statutory duties of such revisor, sec. 43.08, Stats., which defines his duties as being "to formulate and prepare a definite plan for the order, classification, arrangement, printing and binding of the statutes and session laws," and also, after preparation during the intervals of the legislature, "to present to the judiciary committee of the senate . . . such consolidation, revision and other matters relating to the statutes." His bills as presented, therefore, should be looked at in view of the statutory purpose so declared, that is, of simplifying and clearing up the existing law, rather than as proposals to make any material changes in the law. The very heading of this chapter indicates compliance with that duty of effecting the revision and consolidation rather than of making any substantial amendments, changes, or creating new rights. Some of its many provisions, it is true, expressly provide for minor amendments, but by sec. 14 of that chapter, and which is the one material here, the declared subject matter thereof is consolidation and revision, and the word *amend* is conspicuously absent. It provides for consolidation of sub. (5) of the newly thereby created sec. 17.03 with sec. 4935, the one here being considered, and also sec. 4507, which read:

"Any justice of the peace who shall be convicted of bribery or perjury or any other infamous crime, shall in the same sentence be expelled and removed from such office."

This latter provision, in substance, has stood in the statutes as long if not longer than the other provisions so consolidated. It was originally § 7, art. I, "An act concerning justices of the peace," on p. 321 of the Territorial Statutes of 1839, then sec. 264 of ch. 88, "Justices' courts," in the

Revised Statutes of 1849 (apparently wrongly quoted in some of the revisions), then again as sec. 234 of ch. 120 of the revision of 1858, and after subsequent minor changes in language it subsequently appeared as sec. 4507. Through all of its changes, however, it was in accord with the general law covering removals from office, in that it was the conviction and not a commitment that worked a forfeiture. By its consolidation with the other provisions under said ch. 362, Laws 1919, the language of this section disappears altogether, and a justice of the peace is now evidently placed in the same general category with all other officeholders of the state. It could hardly be urged that the provisions of this revised chapter either amended or repealed the old sec. 4507. It was simply carried on and merged into sub. (5), sec. 17.03, and I think the same view should be adopted and conclusion arrived at as to what was intended to be done by the consolidation of said sec. 4935. It was condensation and clarification rather than amendment.

For the foregoing reasons I think the plaintiff came within the reasonable terms of the statute as it stood at the time of his conviction so as to have been entitled to his present claim for compensation upon the reversal of the judgment of conviction though there had been no change in the statute.

I am also convinced that plaintiff was within the terms of sec. 17.03, Stats., as it stood after the revision of 1919 and as it was in force at the time of the reversal. It is a highly remedial statute and should receive no harsh or strained construction. It is aimed to make a slight recompense to one who has suffered a grievous wrong done through the instrumentalities of the sovereign, either state or national, by that which is subsequently found to have been a mistake or miscarriage of justice. That the required financial compensation is to be borne by a particular community rather than by the state at large ought not to militate against its application.

That the salary is to be considered as merely the meas-

ure of compensation is much strengthened from the fact. that since 1913, when ch. 189 of the laws of that year created sec. 3203a, it has been provided that compensation, which under this law is a pure gratuity, should be given by the state to innocent persons who had nevertheless served terms of imprisonment upon conviction of a criminal charge.

Doubtless one who would come within the literal meaning of sec. 3203a and who happened to be an officeholder at the time of his conviction and thereby forfeited his office would not be entitled to compensation under the general terms of sec. 3203a and also under sub. (5), sec. 17.03, and would be confined, either by option or construction of law, to not more than one such method of relief; but nevertheless the idea of compensation is the basis of the one as much as of the other. It is a gratuitous compensation to be borne by the taxpayers, and whether of the commonwealth at large or of some particular community does not essentially alter the spirit and purpose of the laws.

Such features make a substantial distinction between such a case as the one here, or one coming under sec. 3203a, and the situation where, under the doctrine of public policy as adopted by this court, after a choice from conflicting, decisions elsewhere, and as pronounced in *Clausen v. Fond du Lac Co.* 168 Wis. 432, 170 N. W. 287, it is held that municipalities, in the absence of specific statute, should not be required to pay the salary of an ousted *de jure* officer for a period for which it was paying for and receiving the services of a *de facto* officer.

It is held by the majority opinion that to allow the plaintiff to recover under the statute as it stood after the revision of 1919 and at the time of the reversal of the judgment when the term of his office had expired would be to give it a retroactive effect, citing as a basis for such ruling *Keeley v. G. N. R. Co.* 139 Wis. 448, 454, 121 N. W. 167, and *Quinn v. C., M. & St. P. R. Co.* 141 Wis. 497, 124 N. W. 653, both of which involved changes in the death-recovery

statute made after the death for which compensation was sought in the several actions. But, as it was pointed out in the *Quinn Case,* the right to relief under that statute becomes an inchoate one upon the happening of an injury and ripens into a cause of action immediately upon the death, and the rights then so fixed at such respective periods cannot be added to or lessened by legislation (*White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 151, 133 N. W. 148); but to my mind the substantial and important distinction between the two cases is this: There is no right, inchoate or complete, to any subsequent salary as compensation arising upon the conviction. That works, by the constitution and the statute, an absolute forfeiture of office and thereby of salary. The right to the salary as a measure of compensation arises out of the reversal and not from the conviction. The two are separate, distinct, and independent transactions. Plaintiff can base no right upon his conviction, which is, until reversed, absolutely disqualifying, binding, and controlling. When by subsequent proceedings a new result is arrived at, namely, a reversal, then by and through such new proceedings and new conclusion—then and not until, then—do his rights under the statute arise and become fixed. The time of his conviction would therefore be entirely immaterial.

So far as the plaintiff here is concerned, the benefits under sub. (5), sec. 17.03, Stats., first became applicable to him when the reversal of conviction occurred, for until then he had no shadow or semblance of claim to them, and when that time came he was within all the conditions of the statute entitling him to such relief. Being in the nature of a gratuity, so far at least as compensation is made for the time for which he could render no services during the period of conviction, there is no question arising as to whether the statute so giving such gratuity is retroactive or not. There is no more need of considering the question whether there is an express or implied intention to have a retroactive effect,

for such intention may be by implication as well as by express language (*Read v. Madison,* 162 Wis. 94, 100, 155 N. W. 954), as to this statute, than in the case of granting relief to persons who had previously suffered personal injury in connection with some state activity, of which the laws of each session of the legislature afford numerous instances. For example, in the session of 1919 there were allowances of $3,000 and $2,000, respectively, to persons injured by an aeroplane accident at the state fair in 1910, and another substantial allowance for injuries at the same place in 1917, and another to one whose husband had been killed at one of the state institutions.

The judgment of the lower court, to my mind, should have been reversed.

DOERFLER, J.   I concur in the above dissent.

The appellant moved for a rehearing.

In support of the motion there was a brief by *J. M. Becker in pro. per.*, and in opposition thereto a brief signed by *H. N. B. Caradine* and *Olin, Butler, Thomas, Stebbins & Stroud.*

The following opinion was filed February 7, 1922:

PER CURIAM.   Upon a motion for a rehearing the appellant calls attention to the fact that although he was convicted on August 6th and sentenced on August 18th, nevertheless he continued to act as county judge until the 20th day of September, at which time his successor qualified and assumed the office; that he was paid the salary of the office up to and including August 31st; that he is at least entitled to the salary for the period between August 31st and September 20th, during which time he actually occupied the office. This contention is made for the first time upon the motion for a rehearing. Whether appellant is entitled to the salary of the office during such twenty-day period de-

.pends upon special considerations not raised or involved in the theory upon which the case has been prosecuted. The cause of action set out in the complaint is for the salary of the office during the entire period for which it was withheld from appellant. The theory upon which he claimed to have been entitled thereto is fully reviewed in the opinion. His right to the salary during the twenty-day period involves considerations distinct from those heretofore urged upon the county board, the circuit court, or this court, and a claim which was not presented to the county board.

The cause of action set out in the plaintiff's complaint is probably sufficient as a matter of pleading to enable him to recover his salary for any part of the period covered thereby to which he may lawfully be entitled. He should, however, have called to the attention of the trial court as well as the county board the distinct nature of his claim for salary for the twenty-day period. As the claim was presented to the county board and as the case was prosecuted, neither the trial court nor the county board had an opportunity to pass upon the question now raised. It is well established that matters not called to the attention of the court and opposing parties during the trial, so that in the determination of the issues they may be given due consideration, are effectually waived and cannot thereafter be urged as grounds for a new trial or for a reversal of the judgment on appeal. *Congar v. Chamberlain,* 14 Wis. 258; *Harrington v. Downing,* 166 Wis. 582, 166 N. W. 318. An application of this rule in its full vigor would require a holding that plaintiff has waived his right to the salary of the office during the twenty-day period. While we should not entertain the question thus presented for the first time upon a motion for a rehearing, we are not disposed to absolutely foreclose the plaintiff from recovering the salary for the twenty-day period if he be entitled thereto—a question upon which it must be understood we express no opinion.

We feel that the plaintiff should have the opportunity, if he so desires, of presenting his claim for the salary during

the twenty-day period to the county board and to pursue the usual remedies for its recovery. The judgment in this case, therefore, will be without prejudice to the rights of the plaintiff in such respect. The cause of action involved herein will not be considered as including the cause of action for the salary for the twenty-day period, and the judgment herein will not be *res adjudicata* in any proceedings instituted for a recovery of such salary. Otherwise the motion for rehearing will be denied.

So ordered.