## Shields, Appellant, v. Westmoreland County.

*Public officers—Sheriffs—Conviction of infamous crime—Subsequent election to office—Right to salary.*

Section 7, of Article II, of the Constitution of Pennsylvania, providing that "no person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be ......capable of holding any office of trust or profit in this Commonwealth," prohibits the recovery by a county commissioner of salary after he has been convicted of embezzlement of public moneys and perjury committed while exercising the office of sheriff; it is not material that the right of such county commissioner to hold office had never been declared forfeited in quo warranto proceedings.

Argued Feb. 2, 1916. Appeal, No. 210, Oct. T., 1915, by plaintiff, from judgment of C. P. Westmoreland Co., Nov. T., 1914, No. 613, on case stated, in case of John E. Shields v. The County of Westmoreland. Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Case stated to determine plaintiff's right to recover salary. Before DOTY, P. J.

The opinion of the Supreme Court states the facts.

The court entered judgment for defendant on the case stated. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*John E. Kunkle,* with him *Christ C. Walthour* and *J. Harry Pershing,* for appellant.

*Philip K. Shaner* and *William S. Rial,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, April 17, 1916:

John E. Shields was elected sheriff of Westmoreland County at the November election of 1907, and on the first Monday of January, 1908, assumed the duties of his of-

fice, which did not expire until the first Monday of January, 1912. During the last year of his term he was charged with the commission of certain crimes, and, having been duly prosecuted therefor, was found guilty on September 8, 1911, in the Court of Quarter Sessions of the county, of embezzlement of public moneys and perjury. On the twelfth of the same month he was found guilty in the same court of the offense of having allowed prisoners to escape. Notwithstanding these verdicts of guilty, rendered in September, 1911, and which were never set aside, the people of Westmoreland County, strange as it may seem, elected Shields a county commissioner at the general election in November of the same year, and he entered upon the duties of that office on the first Monday of January, 1912. On November 11, 1911, —a little more than a month before he entered upon his duties as county commissioner—he had been sentenced by the Court of Quarter Sessions on the indictments upon which he had been found guilty, to undergo imprisonment in the western penitentiary for the period of two years and four months. On appeals to the Superior Court the verdicts of guilty were not disturbed, but the sentences which had been imposed for a definite, instead of an indefinite period, as required by the Act of June 19, 1911, P. L. 1055, were reversed, and the records remitted, with direction that the court proceed to sentence the defendant afresh, in due order and according to law: Commonwealth v. Shields, 50 Superior Ct. 1 and 194. Upon the return of the records the defendant was sentenced to imprisonment in the western penitentiary for a period of not less than two years and four months and not more than six years. Immediately following these sentences, and in pursuance of them, the prisoner was taken to and confined in the western penitentiary, where he remained until December 23, 1913, when he was pardoned by the governor. On November 9, 1912, while still incarcerated, he resigned as county commissioner, and subsequently brought this action to

recover salary as county commissioner from May 11, 1912, the date of his second sentence, to November 9, 1912, the day he resigned, amounting to the sum of $2,-241.07. His salary had been paid up to May 11, 1912. The foregoing are the material facts agreed upon in a case stated, upon which judgment was entered by the court below in favor of the County of Westmoreland.

By Section 7, Article II, of the Constitution, it is declared that "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the general assembly, or capable of holding any office of trust or profit in this Commonwealth." When Shields was sentenced, May 11, 1912, on the indictments charging him with embezzlement and perjury, he then became convicted of those offenses. The returns of guilty by the jury did not convict him in the legal sense of that term, but judgments on the verdicts did: Commonwealth v. Minnich, 250 Pa. 363; Commonwealth v. Vitale, 250 Pa. 548. He thus came under the ban of the Constitution, and, during the period for which he is claiming salary, he was incapable of holding any office of trust or profit in this Commonwealth; but it is contended by his counsel on this appeal that, because he had not been removed from his office by due proceedings at law, he is entitled to salary as county commissioner during the seven months he was outside of the county, serving time as a convict in one of the penitentiaries of the State. It requires the full measure of judicial patience to give consideration to this proposition, in support of which nothing is to be found in the cases cited in the appellant's brief. The question in the case is not the right to claim the salary of an office by one who holds title to it de jure, but was prohibited from discharging his duties through no fault of his own. The claim of the appellant is for the salary of a public office during a period when, by his own misconduct, he had rendered himself, under the supreme law of the State, incapable of holding it. He was, during that period, an

unpardoned convict, undergoing imprisonment for the crimes of perjury and embezzlement of public moneys. He was civiliter mortuus as to any office of trust. or profit in the Commonwealth, and is no more entitled to what he claims than his estate would be entitled to it if he had physically died May 11, 1912. On that day the Constitution became self operating upon him, and took from him the capacity to hold any further title to the office to which he had been elected. Quo warranto proceedings might have been instituted against him, but were not needed to prevent his recovering salary which the fundamental law of the Commonwealth clearly declares he cannot have.

Judgment affirmed.