## Commonwealth ex rel. Hazel v. Flannery

*Sandra L. Gross, Assistant District Attorney,* for plaintiff.
*James Cunilio,* for defendant.

WRIGHT, *J.,* March 28, 1979—In this action of quo warranto both plaintiff and defendant filed motions for judgment on the pleadings. We entered an order denying plaintiff's motion, granting defendant's motion and dismissing plaintiff's complaint. From that order plaintiff has appealed to the Superior Court of Pennsylvania, necessitating the writing of this opinion.

Defendant, John J. Flannery, has a history of service in public office. As to the office of Constable in the Borough of Trainer, Delaware County, Pa., he is serving his third six-year term. According to

the pleadings he took his present oath of office on January 7, 1974, and the term will expire in January, 1980.[1]

On September 18, 1969, defendant was arrested for an incident that occurred on September 12, 1969 in Montgomery County.[2] As a result of this incident he was found guilty in the Montgomery County Court of burglary, larceny and conspiracy on January 26, 1971.[3] He was sentenced on July 24, 1972, to a term of four months to 23 months in the Montgomery County Prison. He appealed from that sentence, which appeal was denied on February 3, 1975, after which he began to serve the sentence and was released from the Montgomery County Prison on June 2, 1975.

The guilty verdict and sentence were published in newspapers circulated in defendant's community and defendant was, during the time that he was serving the sentence in the Montgomery County Prison, released on the work release program to perform his duties as constable in Delaware County ". . . performing service solely in the civil process."[4]

---

1. This action was commenced almost four years and five months after he commenced his third six-year term.

2. It is to be noted that the arrest was over three years before he was elected to his third term and did not arise out of and was in no way connected with his office of constable.

3. The sentence was imposed over a year and three months before election to this third term.

4. Paragraph 3 of defendant's answer and admitted by plaintiff.

Plaintiff's action is based on Art. II, sec. 7 of the Constitution of this Commonwealth which provides: "No person hereafter convicted of embezzlement of public moneys, bribery, perjury *or other infamous crime*, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." (Emphasis supplied.)[5]

The prime issue in this case therefore is:

Having been convicted of burglary, larceny and conspiracy, has the defendant been convicted of an "infamous crime" under the provisions of Article II, Section 7 of the Constitution?[6]

At the time that we entered our order of February 15, 1979,[7] we did not think they were "infamous crimes" and we still do not think that they are.

Had the framers of the Constitution wanted burglary, larceny and conspiracy included in the prohibition to hold office they could have done so by the simple act of naming those crimes just as they

---

5. Defendant does not question quo warranto being the proper form of action or that the office of constable is an "office of trust or profit."

6. Plaintiff admits that the Acts of May 27, 1841, P.L. 400, sec. 14, and May 7, 1929, P.L. 1581, sec. 1, 13 P.S. §31, that provide for the removal of a constable do not bar a person convicted of crime from taking the office of constable but alleges that those acts must be read in conjunction with Art. II, sec. 7 of the Constitution. We agree that if those acts are contra to the Constitution that they are invalid but we do not agree that they are in anyway applicable here except that they tend to show that the legislative intent is that a conviction of a crime not connected with public office is not grounds for removal from that office.

7. Two of our judges dissented and one did not participate.

named embezzlement of public moneys, bribery and perjury. We are convinced that by the use of "other infamous crimes" they had in mind crimes such as treason and the serious or heinous or similar crimes that are infrequently committed and which would hold a person up to extreme ridicule.

The rule generally followed by our courts when cases such as this are being considered is that an "infamous crime" is one that renders a person incompetent as a witness or a juror: Com. v. Shaver, 3 W. & S. 338 (1842); Com. v. Rudman, 56 D. & C. 393 (1946).

It has been held that bribery is not an "infamous crime." Com. v. Shaver, supra.

Extortion under the color of office has been held not to be an "infamous crime."

Random House unabridged edition of the English Language[8] describes infamous as:

1. "having an *extremely* bad reputation: an infamous city. 2. deserving of or causing an evil reputation; *detestable*; shamefully bad; infamous conduct. 3. Law. a. *deprived of certain rights as a citizen, as a consequence of conviction of certain offenses*. b. of or pertaining to offenses involving such deprivation. . . .—Syn. 1. disreputable, illfamed, *notorious*. 2. disgraceful, scandalous; nefarious, *odious,* wicked, *shocking,* vile, base, *heinous,* villainous . . ." (Emphasis supplied.)

This case comes before this court in 1979, not in the 1800's, the 1920's, 1930's, 1940's, 1950's or even the 1960's. It comes before the court at a time when our legislature no longer considers adultery and fornication a crime and at a time when the Commonwealth of Pennsylvania itself is in the lottery business; at a time when men, women and

---

8. Copyright 1966.

children are using language and doing things that were considered disgraceful, offensive, vile, etc. as little as 20 years ago. It was over 30 years ago that the use of the word d—n by Rhett Butler was somewhat shocking and would no doubt not have been permitted had it not been in the movie epic, Gone With the Wind. Today, words that can be considered much more offensive are used in everyday conversation, broadcast over the radio and heard on television and in moving picture theaters. Many things that were considered immoral as little as 20 years ago are not considered immoral in our modern society.[9]

This case must be decided under the law as it is today. Plaintiff cites cases holding that burglary and larceny are in the nature of crimen falsi. With this contention we agree. However, they are not considered to be so serious that they disqualify one as a witness. Persons who commit those crimes are qualified to become a witness. Our law merely provides that if a person convicted of such a crime becomes a witness the conviction of such crime may be used to impeach his or her credibility.

The cases cited by the Commonwealth to indicate that defendant has been convicted of an "infamous crime" can be distinguished. In Com. v. Clark, 123 Pa. Superior Ct. 277, 187 Atl. 237 (1936), defendant was convicted of embezzlement of public moneys. In Com. ex rel. Bionaz v. Burns, 29 D. & C. 2d 315 (1962), the court said: "We need not determine whether extortion by color of office is an infamous crime because we are satisfied that defendant has

9. The writer of this opinion and many others may not approve of such changes in our morality; however, the fact is there has been such a change and if anyone recognizes this, it has been our courts. Consider the decisions handed down in pornography cases.

been convicted of embezzlement of public moneys within the meaning of article II. sec. 7, of the Constitution." In Shields v. Westmoreland County, 253 Pa. 271, 98 Atl. 572 (1916), defendant was convicted of perjury and embezzlement of public moneys which is clearly within Art. II, sec. 7.

We disagree with the court's holding in Hess v. Hess, 22 Pa. C.C. 135 (1899), in finding that burglary was an "infamous crime." We think the Clarion County Court was in error when it relied on a prior statute which included conviction of burglary as a ground for divorce. The fact that the legislature did not specifically include burglary in the new statute indicates that the legislature no longer intended conviction of burglary as such as a ground for divorce and that the Clarion County Court erred in "stretching" "infamous crime" to include burglary.[10]

Defendant was convicted and sentenced, both of which received wide publicity in his borough, prior to his election in November, 1973.[11] However, the voters of the Borough of Trainer, even with the knowledge of his conviction, considered him a fit person to be elected to a third term as constable. The voters have in effect "passed upon his credibility." Any interpretation of Art. II, sec. 7 that would void the will of the electorate should be avoided especially as to an action instituted after defendant has served four years and five months of a six-year term.

---

10. This court is not bound by a holding of a court in Clarion County.

11. Many persons may feel that a person convicted of crime should not hold public office. Having such an office holder may not be good for the image of the municipality.

The re-election to office operates as a condonation of the people of the Borough of Trainer of his illegal act: 43 Am. Jur., Public Officers, 202 (1942). A court should not remove a public officer for an act committed prior to his present term in office as it would deprive the people of their right to elect their officers: Conant v. Grogan, 6 N.Y. 322 (1887).

Defendant paid his debt to society by serving his sentence. Without a very clear constitutional or statutory mandate to the contrary should the courts deprive him of his office? We think not.

Defendant raised a second issue; namely, laches.

Having determined that defendant has not been convicted of an "infamous crime," we did not consider the defense of laches. Suffice it to say that laches is a permitted defense in a quo warranto action.

If we had passed on this issue we certainly would disagree with plaintiff's argument that the district attorney was not put on notice until approximately one year before this action was instituted and that he immediately began an investigation and a delay of one year after notice is not excessive.

We think that the district attorney was put on notice very shortly after defendant was sentenced.[12] Assuming that the district attorney did not have notice until approximately one year before this action was instituted, if the district attorney acted with due diligence it certainly did not take a year to investigate. He could have easily completed an investigation within a month or less. All that had

---

12. The conviction was in a case brought by the Commonwealth and this is a case brought by the Commonwealth. Montgomery County and Delaware County are contiguous counties. Further, as plaintiff has admitted by failure to deny it in the pleadings, the defendant's arrest, conviction and sentence were given wide publicity.

to be done was to check the records here in Media for defendant's election and oath of office and check the records in Norristown, the County seat of Montgomery (which is within 50 miles of plaintiff's office), for his conviction. All of this could have been done in a day.

From the things alleged by defendant in his pleadings, briefs and argument, it is quite probable that he meets the requirement of a laches defense that he suffered a detriment or was prejudiced by the delay.