**Melvin A. SLAWIK, Plaintiff Below, Appellant,**

v.

**Henry R. FOLSOM, Jr., Mary D. Jornlin, Sherman W. Tribbitt, New Castle County and the State of Delaware, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted April 17, 1979.

Decided Dec. 27, 1979.

---

Sheldon N. Sandler and William J. Wier, Jr., of Bader, Dorsey & Kreshtool, Wilmington, for plaintiff below, appellant.

Carolyn Berger, Asst. Atty. Gen., Wilmington, for defendants below, appellees.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The question before the Court is whether the plaintiff Melvin A. Slawik, former New Castle County Executive, was lawfully removed from office by former Governor Sherman W. Tribbitt, a defendant herein, under the provisions of *Del.Const.* Art. XV, § 6,[1] on the ground that Slawik had been "convicted," within the meaning of that word as used in Art. XV, § 6, of misbehavior in office or of an infamous crime. In this action by Slawik for damages for wrongful removal from office,[2] the Superior

---

1. *Del.Const.*, Art. XV, § 6, provides:

   "All public officers shall hold their offices on condition that they behave themselves well. The Governor shall remove from office any public officer convicted of misbehavior in office or of any infamous crime."

2. This action is for "salary and benefits" for the period commencing on the date of removal, March 9, 1976, and ending on the date of termi-

Court held that Slawik was "convicted" as of the time of his removal and that he was not, therefore, wrongfully removed from office. Thereupon, the Superior Court granted summary judgment for the defendants. *Slawik v. Folsom, et al.*, Del.Super., 389 A.2d 775 (1978). The plaintiff appeals.[3]

## I.

The plaintiff was elected to the office of New Castle County Executive for a four-year term to expire on January 4, 1977.

On March 9, 1976, the plaintiff was found guilty by a jury in the United States District Court for the District of Delaware of three counts of making false declarations before a grand jury, in violation of 18 *U.S.C.* § 1623.

Within 48 hours and prior to sentencing, the defendant Sherman W. Tribbitt, acting in his official capacity as Governor of the State, removed the plaintiff from office under the provisions of Art. XV, § 6, effective immediately on March 11, 1976.

Slawik was sentenced by the U.S. District Court on April 21, 1976. Thereafter, he appealed and, on January 3, 1977, the United States Court of Appeals for the Third Circuit, reversed the convictions. *U. S. v. Slawik, et al.*, 3d Cir., 548 F.2d 75 (1977).

## II.

■ The Superior Court held, and the defendants here contend, that the plaintiff was "convicted", within the meaning of that word as used in Art. XV, § 6, by virtue of the jury verdict of guilt alone. The plaintiff contends, on the other hand, that he was not "convicted" within the meaning of Art. XV, § 6, and therefore could not be lawfully removed from office, until the U.S. District Court had finalized the trial process by entering a "final judgment of conviction" by the imposition of sentence.

The law supports the plaintiff's position. Accordingly, we conclude that the removal of the plaintiff from office on March 11, 1976, was invalid when effectuated, but became valid *nunc pro tunc* with the imposition of sentence on April 21, 1976. On that date, the plaintiff lost all rights to any salary and benefits of his public office that he may have previously possessed, and the question presented, as to the stage at which a "conviction" is deemed to have occurred, became moot.

The key to the problem is found in the decision of this Court in *Fonville v. McLaughlin*, Del.Supr., 270 A.2d 529 (1970). In that case, the issue presented was whether or not a candidate for the General Assembly, who had previously been convicted of grand larceny, could avoid the prohibition of *Del.Const.* Art. II, § 21,[4] because his guilty plea had been stricken pursuant to the expungement provision of the Delaware Probation Statute, 11 *Del.C.* § 4332(i).[5] This Court there stated:

"The threshold question is the meaning of the word 'convicted' as used in Del.

---

nation of the plaintiff's term of office, January 4, 1977, in the amount of $32,929.88, together with attorneys' fees, interest, and costs.

3. The action was brought against the defendants State of Delaware and former Governor Tribbitt for wrongful removal. The defendants Henry R. Folsom, President of New Castle County Council, Mary D. Jornlin, New Castle County Executive, and New Castle County were joined on the theory that if the plaintiff were wrongfully removed from office, the latter defendants are liable to him for the salary and other emoluments of office due him during his period of exclusion from office. The Superior Court ruled only upon the propriety of the removal and did not reach the question of liability. This appeal has been limited to a review of the question decided below. Accordingly, only the defendants State of Delaware and for-

mer Governor Tribbitt (hereinafter "defendants") have participated in this appeal.

4. *Del.Const.* Art. II, § 21 provides:

"No person who shall be convicted of embezzlement of the public money, bribery, perjury or other infamous crime, shall be eligible to a seat in either House of the General Assembly . . . ."

5. 11 *Del.C.* § 4332(i) provides:

"If such offender fully complies with all the terms and conditions of his recognizance and with all terms and conditions of his probation during the entire period prescribed by the court, the plea or verdict of guilty entered by or recorded against such offender shall be stricken from the records of the court."

Const. Art. 2, § 21. We hold that, as used in this constitutional provision creating a disability of citizenship, the word is to be construed in its narrow sense: it consists of more than a verdict or a plea of guilty; it refers to a final judgment of conviction consisting of the adjudication of guilt by plea or verdict followed by the imposition of sentence. See *Truchon v. Toomey*, 116 Cal.App.2d 736, 254 P.2d 638 (1953); *People v. Fabian*, 192 N.Y. 443, 85 N.E. 672." 270 A.2d at 530. Moreover, this Court stated in *Fonville* that, in considering *Del. Const.* Art. II, § 21, "distinction must be made between a conviction which is a final judgment, and a plea or verdict of guilty which is only an element of a conviction." 270 A.2d at 531.

■ *Fonville*, may not be distinguished from the instant case upon the ground that *Fonville* dealt with *Del.Const.* Art. II, § 21, which pertains to eligibility for candidacy to public office, whereas the instant case deals with *Del.Const.* Art. XV, § 6, which pertains to the right to retain public office. The word "convicted" in the two constitutional provisions must be interpreted consistently and harmoniously under basic tenets of constitutional construction; both deal with the same fundamental constitutional purpose. That purpose, which requires the consistent application of these two provisions, was expressed by this Court in *State ex rel. Wier v. Peterson*, Del.Supr., 369 A.2d 1076 (1976), as follows:

"To fully understand the operation of Art. II, § 21, it is necessary to examine its purpose. In our view, it is essentially a character provision, mandating that all candidates for State office possess high moral qualities. It is not a provision designed to punish an offender. While conviction of an infamous crime does not imply that an offender is incapable of functioning as a respected and productive member of society, it is irreversible evidence that the offender does not possess the requisite character for public office. It is important to emphasize that we are not concerned here with the standard of compassion which should govern daily interpersonal relationships. We deal, rath-

er, with a norm established by our Constitution for those who seek to govern us. Without question, it is a demanding norm."

"Indeed, *the principles governing pre-election disqualification appear to be equally applicable to post-election situations. For example, Art. XV § 6, gives the Governor the authority to 'remove from office any public officer convicted of misbehavior in office or of any infamous crime.'* Compare also, Art. VI, § 2, which provides for impeachment and removal from office of 'civil officers . . . for treason, bribery or any high crime or misdemeanor in office.'" (emphasis supplied)

369 A.2d 1080–1081.

■ We hold, therefore, that as used in the Art. XV, § 6, just as in Art. II, § 21, each of which creates a disability to hold public office, the word "convicted" is to be construed as meaning "judgment of conviction" consisting of a determination of guilt by plea or verdict followed by the imposition of sentence. This conclusion is supported by the 1897 Constitutional Debates and the rule generally prevailing elsewhere relative to the establishment of a disability to hold public office.

■ In the Debates relating to Art. XV, § 6, there are several references to the proposition that the word "convicted" means "convicted by a Court" so that a public official subject to removal may be assured of his or her "day in Court". See *State v. Collison*, Del.Super., 197 A. 836, 842–4 (1938). An accused's "day in Court" in a jury trial on a criminal charge does not end with the guilty verdict of the jury. It ends only when the entire trial process has been completed, including: (1) the opportunity of the Trial Judge to correct any error in the trial, either *sua sponte* or upon appropriate motion; and (2) the imposition of sentence. Then, and only then, there exists a judgment of conviction capable of being appealed to a higher Court. A criminal case is not complete and is not disposed of until sentence has been pronounced. Any

stage of the trial short of the imposition of sentence is interlocutory and interim only, and does not amount to one's "day in Court" in the full constitutional sense of those words, particularly when a disability of citizenship is the consequence of the conviction.

The conclusion reached here is supported by the authorities in other jurisdictions that have dealt with the precise issue now before this Court. For example, in *Commonwealth ex rel. McClenachan v. Reading*, Pa. Supr., 336 Pa. 165, 6 A.2d 776, 777–8 (1939), the Supreme Court of Pennsylvania, in reviewing proceedings that sought the ouster of several public officials who had been found guilty of federal crimes,[6] stated:

"As used in Article II, section 7 of the Constitution . . . the word 'convicted' can mean only a final judgment of sentence and not merely a verdict of guilty rendered by a jury. This meaning of the word 'convicted' has been repeatedly applied by this court. In the early case of *Smith v. Commonwealth*, 14 Serg. & R. 69, 70, it was said: 'When the law speaks of conviction, it means a judgment, and not merely a verdict, which in common parlance, is called a conviction.' In *Shields v. Westmoreland County*, 253 Pa. 271, 98 A. 572, where this court was called upon to construe the identical section of the Constitution here in question, we said that the return of guilty by the jury was not a conviction in the legal sense of the term, but that a final judgment on the verdict was necessary. In interpreting a statute using the word 'conviction' the court has held that the strict legal meaning must be applied except where the intention of the legislature is obviously to the contrary: *Commonwealth v. Minnich*, 250 Pa. 363, 95 A. 565, L.R.A. 1916B, 950".

\* \* \* \* \* \*

"Until they have been convicted as evidenced by a final judgment they cannot be deprived of the right to hold the offices to which they were appointed."

In *People . v. Fabian*, N.Y.Ct.App., 192 N.Y. 443, 85 N.E. 672, 675 (1908), the Court, confronted with a statute that prevented any person "convicted of a felony" from registering to vote or voting in any election, concluded:

"[W]here the context in the statute refers to the successive steps in a criminal case, or any particular stage of such a prosecution, as distinguished from the others these words apply simply and solely to the verdict of guilty; but where the reference is to the ascertainment of guilt in another proceeding, in its bearing upon the status or rights of the individual in a subsequent case, then a broader meaning attaches to the expressions, and a 'conviction' is not established or a person deemed to have been 'convicted' unless it is shown that a judgment has been pronounced upon the verdict."

Accord, *Smith v. Commonwealth*, Va.Supr., 134 Va. 589, 113 S.E. 707, 709 (1922).

This rule was more recently applied in *Keogh v. Wagner*, N.Y.Supr., App.Div., 20 A.D.2d 380, 247 N.Y.S.2d 269 (1964) *aff'd*, 15 N.Y.2d 569, 254 N.Y.S.2d 833, 203 N.E.2d 298 (1965). There the State Public Officers Law provided that an office shall be vacant upon the "conviction" of the incumbent officer of a felony or a crime in violation of his oath of office. The crucial question in the case was whether the term "conviction" was to be "construed as including not only a verdict or plea of guilty but also a judgment thereon by the Court." The Court there stated:

"While the word 'conviction' may be ambiguous \* \* \*, there seems to be a guiding principle that emerges from the cases, and that is where disabilities, disqualifications or forfeitures are to follow from a 'conviction', there is no 'conviction' in the eyes of the law unless a sentence is imposed or pronounced and a judgment of conviction entered thereon. . . . Therefore, to constitute a 'conviction' within the meaning of Section 30,

---

**6.** *Pa.Const.* Art. II, § 7 provides that no person convicted of an infamous crime shall be capable of holding any office of trust or profit in the Commonwealth.

subd. 1, par. e. the Public Officers Law, there must not only be an adjudication of guilty, by plea or verdict, but in addition a judgment whether the judgment imposes a sentence or suspends sentence. Cases in other jurisdictions involving the removal of public officers following conviction for crime have reached the same conclusion. (*Smith v. Commonwealth,* 134 Va. 589, 113 S.E. 707, 24 A.L.R. 1286; *Commonwealth ex rel. McClenachan v. Reading,* 336 Pa. 165, 6 A.2d 776).''

247 N.Y.S.2d 272–73, 274. See also *In re Ringnalda,* S.D.Cal., 48 F.Supp. 975 (1943); *Summerour v. Cartrett,* Ga.Supr., 220 Ga. 31, 136 S.E.2d 724 (1964); and *State v. Levi,* W.Va.Supr., 169 W.Va. 277, 153 S.E. 587 (1930).

This also appears to be the law of Maryland. The Maryland Constitution provides for the suspension "by operation of law, without pay or benefits" of any

> "elected official of the State, or of a county or of a municipal corporation who during his term of office is *convicted* of or enters a plea of nolo contendere to any crime which is a felony, or which is a misdemeanor *related to his public duties and responsibilities and involves moral turpitude* for which the penalty may be incarceration in any penal institution . . .'' (emphasis supplied)

*Md.Const.* Art. XV, § 2 (emphasis added). In response to a request by the Maryland State Senate,[7] the State Attorney General rendered an opinion regarding the definition of "conviction" as used in *Md.Const.* Art. XV, § 2. After a review of the authorities of Maryland and other jurisdictions, the Attorney General advised the Senate that the word "convicted" in the constitutional provision "means the judgment of conviction which occurs upon sentencing." 62 Op.Atty.Gen. 365, 371 (1977).[8]

Certain cases cited by the defendant and by the Superior Court, incorrectly classified as expressing a contrary view on the issue but really distinguishable on their facts, point out that after a "verdict of guilty . . . thereafter the presumption of innocence no longer . . . [follows] defendant." *State v. Redman,* Ind.Supr., 183 Ind. 332, 109 N.E. 184 (1915). Invariably, such cases have involved situations in which the official sought to be removed was already under sentence, or in prison, or the official was seeking to keep his office pending appeal. Such cases relied on more compelling public interest concerns applicable to those situations.. See e. g., *McKannay v. Horton,* Cal.Supr., 151 Cal. 711, 91 P. 598 (1907); and *Atty. Gen. ex rel. O'Hara v. Montgomery,* Mich.Supr., 275 Mich. 504, 267 N.W. 550 (1936). It is noteworthy, that in *Redman,* and *McKannay,* the Court was not explicitly requested to decide and did not decide the issue now before this Court; i. e., whether, for purposes of removal of an elected official, a "conviction" occurs at verdict or sentencing. See *Anno: Officer-Conviction of Crime,* 71 A.L.R.2d 593 (1960).

It was upon the latter type of inapposite case that the defendants and the Superior Court relied in the instant case. In *State v. Twitchell,* Wash.Supr., 59 Wash.2d 419, 367 P.2d 985 (1962), the Court considered whether removal of a public officer was proper after sentence and during appeal. In the case of *People ex rel. Keenan v. McGuane,* Ill.Supr., 13 Ill.2d 520, 150 N.E.2d 168 (1958), the Court was engaged in deciding whether an appeal from a conviction stayed the effect of a constitutional provision that declared that no person "convicted" of certain crimes was eligible to hold public office. In neither of those cases did the Court decide the issue of whether "conviction" occurs at the time of verdict or sentence. The same is true of *State v. Sullivan,* Ariz.Supr., 68 Ariz. 81, 200 P.2d 346 (1948) and *Toro v. Malcolm,* N.Y.Supr. Ct., App.Div., 44 N.Y.2d 146, 404 N.Y.S.2d 558, 375 N.E.2d 739 (1978) upon which the defendants rely.

---

7. The request was precipitated by the return of a guilty verdict on extortion charges in the U.S. District Court against a member of the Maryland House of Delegates. No sentence had yet been imposed.

8. The opinion appears as being addressed to *Md.Const.* Art. XV, § 3. That section was renumbered as Art. XV, § 2 in 1978.

Sound public policy, too, requires the result we reach here. While a public official found guilty of a prohibited act should not be permitted to continue in office too long thereafter (such as the months and years often required for the appellate process), because of the vital need for the public's trust and confidence in public officers, it is also important that a public officer, especially one elected by the people, not be permanently removed from office under *Del.Const.* Art. XV, § 6, with undue haste, before he has had his full and complete "day in court."[9] That time comes with imposition of the sentence of the Court after guilt has been found.

The defendants place much reliance upon *Martin v. State*, Del.Super., 116 A.2d 685 (1955), in which the Court concluded that, in determining the right of appeal, the word "convicted", as used in the State Motor Vehicle Law, meant "a judicial determination of guilt after an assertion of innocence and not merely a judicial entry of an admission of guilt after a guilty plea." As stated in *Martin*, the word "convicted" is ambiguous—a "verbum aequivocum", the meaning of which may vary with the purpose and context of the statute [or constitutional provision] in which it is used. 116 A.2d at 686.

In the instant case, however, the word "convicted" can have only one legal meaning under the Constitutional Debates, our prior decisions in *Fonville* and *Peterson*, and the great weight of authority: it means judgment of conviction, which occurs upon the imposition of the sentence of the Court.

## III.

It follows from the foregoing that the removal of the plaintiff was invalid and ineffective from March 9, 1976, the date of removal, until the date of the sentence imposed on April 21, 1976. On the latter date, the plaintiff stood "convicted" within the meaning of *Del.Const.* Art. XV, § 6 and, therefore, on that date the removal became valid and effective *nunc pro tunc.*

In view of the limited scope of this appeal (see footnote, p. 2 supra), we make no judgment as to the merits of the plaintiff's claim for the period prior to April 21, 1976. We hold, however, that on and after April 21, 1976, the plaintiff was not entitled to any salary and benefits accruing from the office of New Castle County Executive, and the question here presented on that date became moot. * * *

Accordingly, the judgment below is reversed and the cause remanded to the Superior Court for further proceedings consistent herewith.

---

9. Attention is invited to the Maryland Constitutional provision which protects both the public and the public officer in an admirable manner. *Md.Const.*, Art. XV, § 2 (1978) provides:

"Any elected official of the State, or of a county or of a municipal corporation who during his term of office is convicted of or enters a plea of nolo contendere to any crime which is a felony, or which is a misdemeanor related to his public duties and responsibilities and involves moral turpitude for which the penalty may be incarceration in any penal institution, shall be suspended by operation of law without pay or benefits from the elective office. During and for the period of suspension of the elected official, the appropriate governing body and/or official authorized by law to fill any vacancy in the elective office shall appoint a person to temporarily fill the elective office, provided that if the elective office is one for which automatic succession is provided by law, then in such event the person entitled to succeed to the office shall temporarily fill the elective office. If the conviction becomes final, after judicial review or otherwise, such elected official shall be removed from the elective office by operation of Law and the office shall be deemed vacant. If the conviction of the elected official is reversed or overturned, the elected official shall be reinstated by operation of Law to the elective office for the remainder, if any, of the elective term of office during which he was so suspended or removed, and all pay and benefits shall be restored."