[No. 35956.    *En Banc.*    January 12, 1962.]

THE STATE OF WASHINGTON, *on the Relation of Arnold R. Zempel, Plaintiff,* v. ROBERT TWITCHELL, *Defendant and Relator,* THE SUPERIOR COURT FOR SNOHOMISH COUNTY, *William J. Wilkins, Judge, Respondent.*\*

\*Reported in 367 P. (2d) 985.

*Clay Nixon* and *Robert L. Butler,* for relator.

*Arnold R. Zempel* and *Russell C. Jefferson,* for respondent.

FINLEY, C. J.—In this certiorari action the petitioner seeks to void a decree of the superior court in *quo warranto* proceedings ousting him from the office of county sheriff. The facts and events leading to review here by certiorari are as follows:

On January 22, 1960, a Snohomish County Grand Jury indicted Robert Twitchell, the relator herein. In three separate counts the indictment charged that Twitchell, while serving as the duly elected sheriff for Snohomish County willfully and knowingly failed and neglected to perform a duty enjoined upon him by law by permitting "the keeping of a house of prostitution and the practice of prostitution" within the county. A criminal trial was held in the Superior Court for Snohomish County, and on November 9, 1960, a trial jury returned a verdict of guilty on two of the three counts charged. On January 12, 1961, the trial court entered judgment and sentence. Notice of appeal was timely filed.[1]

On January 16, 1961, the Board of Commissioners of Snohomish County, by resolution, declared the office of county sheriff vacated as of January 12, 1961. On January 17, the prosecuting attorney for Snohomish County filed an information in *quo warranto*. It recited as a fact the criminal conviction of the county sheriff and asserted that the office had been vacated and forfeited by the criminal conviction in the superior court and that the relator was

---

[1]The matter is now pending in the Supreme Court. It is unlikely that this criminal appeal can be heard and determined until the May term, or perhaps the September term, as a statement of facts and opening briefs are not yet filed by appellant Twitchell.

refusing to relinquish the office. The prayer of the information in *quo warranto* sought a judicial determination that under the statutes of Washington the relator's status or position as sheriff was forfeited and that the office of sheriff was thereby legally vacated. Also, a court order was sought legally ousting relator from the office of sheriff.

The relevant statutes are RCW 42.12.010, which states:

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer. . . . fifth, his conviction of an infamous crime, or of any offense involving a violation of his official oath; . . ."

and RCW 9.92.120, which reads:

"The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall disqualify him from ever afterward holding any public office in this state."

On February 2, 1961, the relator moved to dismiss the information, and on February 8, 1961, further moved to strike certain portions of the information. Both motions were heard on February 10, 1961, and were orally denied at that time. The trial judge advised relator that the initial or basic question raised by the ouster proceeding was whether the superior court conviction of willful, knowing neglect of duty amounted to either a violation of relator's official oath, or malfeasance in office, under the two pertinent statutes, *supra.* The trial judge stated that he would decide all questions presented and would make a final determination as to the ouster proceeding on February 15, 1961, and the parties were directed to present any further pleadings or motions by that time. February 15 was selected so relator would have time to apply for a writ of prohibition in the Supreme Court. Such an application was made, and after argument and hearing the application was denied on February 14, 1961.

On February 15, written orders denying relator's motion to dismiss and motion to strike were signed and entered by the trial court, and an answer to the information was

filed. The answer admitted that relator had been criminally convicted in the superior court, but attempted to set up two affirmative defenses: (1) That the Board of County Commissioners did not have authority to vacate relator's office; and (2) that relator had not violated his official oath of office because he had faithfully and impartially discharged the duties of the office to the best of his ability "by repeated warnings and surveillance and attempting to close the alleged establishments of prostitution by making it difficult and unprofitable to operate."

The trial judge orally denied a demand for a jury. Relator then requested a stay of the entry of judgment to allow sufficient time to permit another application to the Supreme Court for a writ of prohibition. This was denied on the ground that time had already been allowed for this purpose. The court, acting on the prosecuting attorney's motion "that the relief prayed for in the information be granted", determined that the pleadings presented only an issue of law, and proceeded to enter a judgment of ouster, including also findings of fact and conclusions of law.

Relator sought and obtained a writ of certiorari to review the actions of the trial court.

We note as a preliminary matter that the action of the Board of County Commissioners is irrelevant to the issues before this court. If the relator's office is vacant and forfeited, it is the result of the operation of statutory law, and not the result of a resolution of the Snohomish County Board of Commissioners acknowledging that a vacancy existed.

It is contended that certain Rules of Pleading, Practice and Procedure were violated in the *quo warranto* proceedings, thereby depriving relator of a reasonable time to prepare for a trial on issues of fact and law resulting in a denial of due process of law. The specific violations alleged are that (1) relator was not given ten days after the trial court's action in denying relator's motion to dismiss and motion to strike, to file his answer to the *quo warranto* information as required by Rule 12(a); (2) three days' notice of the time and place of the submission of

proposed findings and conclusions was not allowed as provided in Rule 52.08W; and (3) Rule 56(c) was not complied with since relator was not given ten days' notice of a hearing in summary judgment. These contentions will be dealt with seriatim.

(1) It is implicit in Rule 12(a) that differing circumstances result in different time limits for preparing responsive pleadings. After designating the various time periods, the rule provides as follows:

" . . . The service of a motion permitted under this rule alters these periods of time as follows, *unless a different time is fixed by order of the court*: (1) If the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action; (2) . . . " (Italics ours.)

Clearly, the ten-day requirement is not absolute, but is subject to modification according to the discretion of the court. See Meisenholder, *The Effect of Proposed Rules 7 Through 25 on Present Washington Procedures,* 32 Wash. L. Rev. 219, 253-254 (1957). The reason for allowing some discretion in these circumstances is to guard against motions brought merely for dilatory purposes. In the instant case, although the court fixed a time for submission of the pleadings which was less than ten days after oral notice was given, it cannot be said that there was an abuse of discretion. Since relator filed his answer on the date fixed by the court, it is obvious that he had sufficient time to prepare this pleading. Additional time to prepare a responsive pleading was not sought at the time, and there is nothing to indicate that the answer would have been any different had a few more days been allowed. Relator is therefore in no position to complain now about the date fixed for answer.

(2) According to Rule 52.04W, "The trial court shall make findings of fact in all cases *tried* before the court without a jury." (Italics ours.) Neither a proceeding in summary judgment nor a judgment on the pleadings can be regarded as a trial, since issues of fact are not tried.

The function of a summary judgment proceeding, or a judgment on the pleadings is to determine whether or not a genuine issue of fact exists, not to determine issues of fact. Assuming, *arguendo*, that the trial court granted a summary judgment, findings and conclusions were unnecessary. Innumerable cases to this effect appear in 4 Fed. Rules Digest, 52 a 1. See also, Comment 31 Wash. L. Rev. 261 (1956). A fortiori findings are unnecessary in a proceeding for judgment on the pleadings, since the judgment is based solely on the pleadings without regard to supporting affidavits. See *Finley v. Finley* (1953), 43 Wn. (2d) 755, 264 P. (2d) 246, 42 A. L. R. 1379. Findings and conclusions in the instant case were superfluous. Their absence could not have prejudiced relator's case in any way. Rule 52.08W is therefore inapplicable.

■ (3) There is no doubt that ten-days' notice would be required if the proceedings leading to the ouster judgment were in the nature of summary judgment. The record shows, however, that the trial court's decision was based on the *pleadings*. Language appearing in *Mayflower Air-Conditioners v. West Coast Heating Supply* (1959), 54 Wn. (2d) 211, 215, 339 P. (2d) 89, is appropriate and instructive at this point:

"We cannot, however, pass without comment the . . . contention that the motion on which the trial court passed was a motion for summary judgment. It not only was not denominated a motion for summary judgment, but there was no attempt to comply with the summary judgment rule . . . which requires that the notice thereof be served ten days before hearing. . . ."

The court continued by considering the " . . . motion for what it was, a motion for judgment on the pleadings. . . . " We must do the same here. To do otherwise is to render Rule 12(c), pertaining to judgments on the pleadings, totally useless. Since Rule 56(c) does not apply to judgments on the pleadings, relator's contention is without merit.

To summarize this phase of the case, we hold that the relator was not prejudiced by the procedure followed by

the trial court, and it follows from this and the foregoing discussion that relator was afforded procedural due process.

Relator's next contention is that the trial court erred in summarily ordering relator's ouster because the pleadings raised a question of fact; i.e., whether the method utilized by relator to eradicate prostitution in Snohomish County was sufficient to satisfy the requirements of his oath of office.

■ The information in *quo warranto* asserted three things: (a) that in a prosecution for a criminal offense relator had been convicted of knowing, willful neglect of duty; (b) that relator's office or status as sheriff had been vacated and forfeited; and (c) that relator had refused to relinquish and vacate the office of Snohomish County Sheriff. The prayer was for a judgment of ouster declaring that the office was vacant. The purpose of the ouster action was to obtain a judicial determination that as a matter of law relator's conviction under the statutes of Washington resulted in forfeiture and vacation of the public office held by him. It was not denied, nor could it have been, that a criminal conviction of relator had occurred in the superior court. The only determination that the court was required to make in the *quo warranto* proceeding, aside from any constitutional question, was whether relator's conviction for knowing, willful neglect of duty amounted to a violation of his official oath or malfeasance under our statutes. These were questions of law, and the judge was not in error in proceeding to enter the judgment of ouster if in this connection his conclusions of law were correct.

The jury in legal effect and consequence found in the criminal case that relator

" . . . did *wilfully and knowingly* fail and neglect to perform a duty enjoined upon him by law, in that he knowingly, without making a complaint and without making an arrest, permitted the keeping of a house of prostitution and the practice of prostitution, each of which constitutes a breach of the peace and a public offense." (Italics ours.)

Relator's official oath was:

"I, Bob Twitchell, do solemnly swear (or affirm) that

I will support the Constitution and Laws of the United States and the Constitution and Laws of the State of Washington, and that *I will faithfully and impartially perform and discharge the duties of the office of County Sheriff according to law* to the best of my ability." (Italics ours.)

■■ The phrase, "to the best of my ability," is not a qualification of the standards expected of a county sheriff, for *legal duty* cannot be measured by a particular sheriff's best ability. Rather, the phrase is in the nature of a promise to devote unceasing effort toward performing and discharging those duties of the office which are imposed by law and which the affiant (by virtue of the preceding portions of the oath) solemnly swears to uphold. The jury determination that relator had willfully and knowingly failed and neglected to perform a duty enjoined upon him by law, therefore, necessarily included a determination of a violation of oath of office. Whether the method allegedly utilized by relator to eradicate prostitution was sufficient to satisfy the requirements of the law is totally irrelevant as to the ouster proceeding and this appeal. The crucial question before this court at this time is whether the trial court erred in determining that willful neglect of duty was a violation of relator's oath. For the reasons indicated above, we adhere to the trial court's decision. Furthermore, in passing, we note that the conviction of relator also may very well constitute "malfeasance" and that a forfeiture of the office would consequently result under RCW 9.92.120. The terms "malfeasance" and "neglect of duty" were recognized as interchangeable under that statute in *State ex rel. Knabb v. Frater* (1939), 198 Wash. 675, 680, 89 P. (2d) 1046, wherein the court commented and made these references:

" 'Malfeasance' is defined as follows:·

" 'Evil doing; ill conduct: the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which the person ought not to do at all; the doing of what one ought not to do; the performance of some act which ought not to be done; the unjust performance of some act which the party had no right, or which he had contracted not, to do.' 38 C. J. 344.

" 'The terms malfeasance and neglect of duty are comprehensive terms and include any wrongful conduct that affects, interrupts, or interferes with the performance of official duty.' *State v. Ward,* 163 Tenn. 265, 43 S. W. (2d) 217."

We hold that the relator's status or office as Snohomish County Sheriff was vacated upon the relator's conviction of willful, knowing *neglect of duty,* and that there was no dispute of material fact requiring a trial in the *quo warranto* proceeding. The factual argument that relator's conduct did not amount to a violation of his official oath had been adjudicated against him in the criminal action and could not be relitigated in the ouster proceedings.

Finally, contention has been made that the determination in the criminal case cannot be *res judicata* in the *quo warranto* proceedings, and that RCW 42.12.010 and RCW 9.92.120 are inoperative, that is, can be of no legal effect until after a final determination by the state Supreme Court respecting relator's appeal from his criminal conviction, otherwise the statutes deny the right of appeal to defendant Twitchell in his capacity as a public office holder and therefore conflict with and are voided by Art. 1, § 22 (as amended) of the state constitution.

In all fairness, it should be acknowledged that courts in a few other jurisdictions have yielded to sentimentality or empathy for public officials and, accordingly, have construed comparable statutory or constitutional language to reach the result advocated by relator. See *Byers v. Smith* (1935), 4 Cal. (2d) 209, 47 P. (2d) 705; *People v. Enlow* (1957), 135 Colo. 249, 310 P. (2d) 539; *Pineville v. Collett* (1943), 294 Ky. 853, 172 S. W. (2d) 640. However, an overwhelming majority of cases from other jurisdictions have taken the position that the term "conviction" appearing in constitutional or statutory provisions similar to RCW 42.12.010 and RCW 9.92.120 means simply conviction in a trial court. See *McKannay v. Horton* (1907), 151 Cal. 711, 91 Pac. 598; *People ex rel. Keenan v. McGuane* (1958), 13 Ill. (2d) 520, 150 N. E. (2d) 168, 71 A. L. R. (2d) 580; cert. denied 358 U. S. 828, 3 L. Ed. (2d) 67, 79 S. Ct. 46; *State*

*v. Redman* (1915), 183 Ind. 332, 109 N. E. 184; *Bell v. Treasurer of Cambridge* (1941), 310 Mass. 484, 38 N. E. (2d) 660; *Attorney General ex rel. O'Hara v. Montgomery* (1936), 275 Mich. 504, 267 N. W. 550; *State ex rel. Hunter v. Jurgensen* (1938), 135 Neb. 136, 280 N. W. 886; cert. denied 307 U. S. 643, 83 L. Ed. 1523, 59 S. Ct. 1047; *Smith v. Noeppel* (1953), 204 Misc. 49, 120 N. Y. S. (2d) 466; *In re Obergfell* (1924), 239 N. Y. 48, 145 N. E. 323; *State ex rel. Olson v. Langer* (1934), 65 N. D. 68, 256 N. W. 377; *State ex rel. Salisbury v. Vogel* (1934), 65 N. D. 137, 256 N. W. 404; *State ex rel. Giles v. Burke* (1941), 101 Utah 48, 117 P. (2d) 454; *State ex rel. Blake v. Levi* (1930), 109 W. Va. 277, 153 S. E. 587; *Becker v. Green Cy.* (1921), 176 Wis. 120, 184 N. W. 715. An annotation covering the general problem appears in 71 A. L. R. (2d) 593.

▇▇▇ Article 1, § 22,[2] unquestionably establishes and is a constitutional guarantee of the right of appeal to defendants *in criminal cases.* But it is *no more* than this. Furthermore, it simply would be stretching the cloth to fit the pattern, and much too much, to engraft upon this provision of the constitution a special constitutional protection and right, applicable only to a judicially synthesized classification of criminal defendants; namely, those few criminal offenders who by accident or fortuitous circumstance occupy public office. Relator Twitchell has not yet perfected his appeal in the criminal case in which he stands convicted in the Superior Court for Snohomish County. But it is crystal clear that in this respect the protection of Art. 1, § 22, is available, and that he has not been denied any constitutional rights thereunder. Our statutory provisions relating to vacation of office, or removal of public officers cannot be said to limit, restrict or deny something that does not exist, namely, special employment benefits or protection for public officeholders while an appeal from a criminal conviction is pending.

Every other criminal defendant convicted at the trial court level is forced to bear hardships, even if his conviction

---

[2]"In criminal prosecutions, the accused shall have . . . the right to appeal in all cases . . . ."

is overturned on appeal. See *State ex rel. Guthrie v. Chapman* (1936), 187 Wash. 327, 60 P. (2d) 245, 106 A. L. R. 640; *Becker v. Green Cy., supra.* Adverse publicity, social stigma, and personal losses are commonplace—in fact, almost inevitable. Convicted criminal offenders may even lose their jobs—and probably will, if their employer chooses or feels forced by circumstances to discharge them. The results can be and often are harsh and unfortunate, but this does not amount to, or at least has not yet been judicially recognized as, an infringement upon the right of appeal. Realistically, the instant case is indistinguishable. The relator has filed his notice of appeal. In due course his appeal will come before this court in the same manner as thousands of other criminal appeals. Relator's appeal has been and will be handled no differently from any other comparable criminal appeal. The ouster from office is a matter entirely unrelated to the criminal appeal, just as the loss of employment is unrelated to the appeal of any criminal defendant who is not a public officer.

■ Vacancy in, or removal from, office as a result of a conviction of a public officer is not a punishment. *McKannay v. Horton, supra.* Removal from office is simply a consequence of a reasonable and sound public policy, and a condition imposed upon a public official in furtherance of the public interest in good government *State ex rel. Guthrie v. Chapman, supra.* "Officers are elected not for the benefit of the individuals, but for the benefit of the community . . . ." *State ex rel. Lysons v. Ruff* (1892), 4 Wash. 234, 243, 29 Pac. 999. Public officials can and should be removed, irrespective of detriment to the individuals involved if the interests of the community so require. That is precisely the legislative policy and purpose of RCW 42.12.010, and the reason the statute was enacted and has been continued on the books. Thus, the statute is an expression of public policy by the legislature, clearly within the ambit of the constitutional prerogative of that branch of state government, pursuant to Art. 5, § 3,[3] of the state constitution.

---

[3] "All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law."

The public policy as expressed by the legislature has stood unaltered for ninety-five years—in fact, since territorial days. Basically, the statute is a legislative statement of qualifications for holding public office. One such qualification is that a public official convicted of "any offense involving a violation of his official oath" shall not hold a position of public trust. This court should not lightly brush aside determinations as to public policy duly and officially made by the legislative branch of government. Certainly, in the instant case we should not alter and revise qualifications established by the legislature for public officers—qualifications which are so well recognized and of such long standing.

An examination of the cases reveals that this court has recognized the wisdom of the legislative policy expressed in RCW 42.12.010 and RCW 9.92.120, certain arguments as to unconstitutionality to the contrary notwithstanding. In *State ex rel. Guthrie v. Chapman* (1936), 187 Wash. 327, 60 P. (2d) 245, the court carefully considered and construed the statutes with which we are presently concerned. There, a county commissioner was convicted of grand larceny and ouster proceedings were commenced. A judgment of ouster was entered; subsequently, the conviction in the criminal case was reversed. A petition for a new trial on the question of ouster was filed by the former commissioner, who sought reinstatement in office by virtue of the reversal. The petition was denied, and application was made for certiorari.

Judge Steinert, speaking for this court, *all concurring,* stated:

*"The conviction of grand larceny carried with it, and imposed upon the relator, as a necessary and immediate accompaniment, the forfeiture of his office and, at the same time, created a vacancy in that office.* The judgment of ouster constituted a judicial determination of the facts made by the record of relator's conviction and also a legal declaration of his status with respect to the office formerly held by him. That judgment was self-executing and, by its own force and without the aid of process or further action of the court, accomplished the object sought to be obtained by the statute, which was the immediate and effectual

divestiture of the relator of all official authority whatever." (Italics ours.)

In *State ex rel. Knabb v. Frater* (1939), 198 Wash. 675, 89 P. (2d) 1046, the court again considered the same statute. That the automatic forfeiture effect of the statute was argued and considered by the court is made obvious by these words from the opinion:

"Contention is made that relator has appealed from the judgment of conviction in the criminal action, and that his appeal is now pending in this court. *Any contention that the appeal stays the ouster proceedings is foreclosed by our decision in State ex rel. Guthrie v. Chapman . . .*" (Italics ours.)

There is language to the same effect in *State ex rel. Austin v. Superior Court* (1940), 6 Wn. (2d) 61, 106 P. (2d) 1077.

These long-standing and well-reasoned cases suggest no delusions as to the purpose and effect of Art. I, § 22. Rather, they consistently articulate the sound and reasonably necessary public policy inherent in RCW 42.12.010 and RCW 9.92.120. The trial court, adhering to *stare decisis,* properly followed the case law of this state and the case law of an imposing majority of other states. The *quo warranto* proceeding in the instant case resulted in a formal legal declaration of the vacancy and an order that relator relinquish the perquisites of his former office. The conviction in the superior court was *res judicata* as to factual issues raised in relator's defense in the *quo warranto* proceeding. Relator has been denied no constitutional rights; consequently, the trial court should be and is hereby affirmed.

HILL, DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

MALLERY, J. (concurring)—In our review of the instant judgment on the pleadings, we need look no further than the sufficiency of the answer to allege a defense. I think it does not allege a defense and that this court should so hold as a matter of law.

The answer admits that the relator was convicted of a willful neglect of duty as sheriff of Snohomish County in

that he knowingly permitted the keeping of a house of prostitution and the practice of prostitution. His affirmative defense was, *inter alia*:

" . . . that he faithfully and impartially discharged the duties of his office to the best of his ability and judgment by repeated warnings and surveillance, attempting to close the alleged establishments of prostitution by making it difficult and unprofitable to operate."

Relator's surveillance of houses of prostitution and warnings to them, not being a lawful method of law enforcement procedure, did not amount to a performance of duty at all. The test of whether or not an officer performs his duty "to the best of my ability" relates to the method used, not to his degree of success. It was not the relator's privilege, under his oath of office, to deliberately choose surveillance of and warnings to houses of prostitution as the sole method of performing his duty, because the law does not sanction it as a performance "according to law." There can be no proper defense predicated upon ability to act where there is an absence of any intention or attempt to act by way of a lawful performance of duty.

I concur in the result of the majority opinion.

FOSTER, J. (concurring in the result)—Article I, § 22, of the state constitution (the tenth amendment) guarantees the right of appeal in all criminal cases, while the Organic Act contained no such guarantee, so it was within the province of the territorial legislature to grant or deny appeal in a criminal case.

The territorial legislature of 1866 enacted RCW 42.12.010, which provides that a public office is vacated if the occupant thereof be convicted of specified crimes. This statute has not been re-enacted since statehood. Territorial statutes in conflict with the subsequently adopted constitution were repealed thereby. *State ex rel. Washington State Sportsmen's Council v. Coe,* 49 Wn. (2d) 849, 307 P. (2d) 279.

The criminal code of 1909 (Laws of 1909, chapter 249, § 37, p. 900), which was adopted from the criminal code of New York, contains a similar provision (RCW 9.92.120)

declaring that a public office is vacated if the occupant thereof be convicted of specified crimes. New York has no constitutional provision guaranteeing a right of appeal from a conviction of a criminal offense. Consequently, the legislature of that state may grant or deny an appeal in a criminal case. *People v. Gersewitz,* 294 N. Y. 163, 61 N. E. (2d) 427.

The court decides that neither RCW 42.12.010 nor RCW 9.92.120 violate the constitutional guarantee of a right of appeal in all criminal cases contained in the tenth amendment to the state constitution.

The precise question here is: Do the two statutes declaring a public office forfeited upon a judgment of conviction of specified crimes violate the provision in the tenth amendment guaranteeing a right of appeal in all criminal cases?

While the constitution of Nebraska (Art. I, § 23) provides for a writ of error as of right in felony convictions,[4] only two states besides Washington, Arizona (Art. II, § 24) and Utah (Art. I, § 12), constitutionally guarantee a right of appeal in all criminal cases. Therefore, I at once put aside all decisions from other states on both sides of the question because, under such circumstances, the legislature may deny any appeal. *People v. Gersewitz, supra.*

*State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P. (2d) 245,[5] 106 A. L. R. 640, and *State ex rel. Knabb v. Frater,*

---

[4]Index Digest of State Constitutions (2d ed., 1959), Courts, Appeals, p. 199.

[5]The court's opinion in the *Guthrie* case was based upon *Becker v. Green Cy.,* 176 Wis. 120, 184 N. W. 715, 186 N. W. 584. In the *Guthrie* case, the court said:

" . . . The only case cited to us, and the only one that we have been able to find, bearing any close similarity to the facts of this case is that of *Becker v. Green County,* 176 Wis. 120, 184 N. W. 715, 186 N. W. 584."

It is interesting to note that after the conviction but before the opinion of the Supreme Court of Wisconsin in the *Becker* case, the statute was amended to provide:

" . . . Reversal of the judgment against such officer shall forthwith restore him to office, if the term for which he was elected or appointed has not expired . . . " Wis. Stat. Ann., § 17.03(5).

Article 5969, Vernon's Ann. Texas Civ. Stat., provides that the appeal

198 Wash. 675, 89 P. (2d) 1046, specifically decide that an office is vacated by the judgment of conviction and that such forfeiture is not superseded by appeal. However, in neither case did the court consider any conflict between the statutes and the constitutional guarantee of a right of appeal.

The highest courts in the other two states, without mention of the constitutional guarantee but relying on our *Guthrie* decision, decided that the forfeiture of the office was not suspended by an appeal. *State ex rel. De Concini v. Sullivan,* 66 Ariz. 348, 188 P. (2d) 592; *State ex rel. Giles v. Burke,* 101 Utah 48, 117 P. (2d) 454.

If this were an open question, a very strong argument could be made that the statutes involved conflict with Art. I, § 22, of the state constitution, guaranteeing a right of appeal in all criminal cases, but in the light of the judicial history it is not now possible to reverse this judgment unless the prior cases are overruled.

For this reason, I concur in the affirmance.

HUNTER, J. (dissenting)—I dissent.

The relator's office was vacated by the trial court prior to the review by this court of the relator's appeal of his conviction. Therefore, he was denied his right of appeal guaranteed by Art. I, § 22, of the state constitution. Judge Foster's reasoning in his concurring opinion in this respect is sound. I disagree with Judge Foster only in his conclusion that this court, by *stare decisis,* is controlled by our holdings in the cases of *State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P. (2d) 245, 106 A. L. R. 640, and *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P. (2d) 1046. In these cases, as stated by Judge Foster, this court did not consider any conflict between the statutes (RCW 42.12.010 and RCW 9.92.120) and the constitutional guarantee of a

shall supersede the forfeiture unless the court shall deem it in the public interest to suspend the convicted officer from his office pending appeal.

right of appeal. Under these circumstances, this court should not hesitate to overrule prior cases.

The judgment vacating the relator's office prior to disposition of the appeal of his conviction should be reversed.

OTT, J., concurs with HUNTER, J.