[No. 47341-2. En Banc. December 4, 1980.]

KITSAP COUNTY REPUBLICAN CENTRAL COMMITTEE, ET AL, *Respondents,* v. SHERRIL HUFF, *Appellant.*

C. *Danny Clem, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for appellant.

*Davis, Wright, Todd, Riese & Jones,* by *Edward N. Lange* and *Richard A. Derham,* for respondents.

WILLIAMS, J.—During the week of July 28, 1980, Gordon Walgren filed for the Democratic nomination for state senator from the 23rd legislative district. On September 16, 1980, he defeated his opposition and won the right to appear on the ballot as the Democratic nominee at the general election, which was scheduled to be held November 4, 1980.

During the late summer and early fall, Walgren was undergoing a trial in the United States District Court for the Western District of Washington involving several counts of felonies. On October 3, 1980, a jury found Walgren guilty of three counts. Sentencing has been set for a date after the general election.

We were assured at oral argument that Walgren had filed several posttrial motions: arrest of judgment, judgment notwithstanding the verdict, and new trial. On October 6,

1980, the Kitsap County Democratic Central Committee met and designated Billie Eder as the Democratic candidate for the 23rd legislative district state senator. Eder's name was submitted to appellant Kitsap County Auditor Sherril Huff, who initiated action to place that name on the ballot for the November 4, 1980, general election.

On October 15, 1980, respondents Kitsap County Republican Central Committee, Hal Reynolds, its chairman, and a Kitsap County voter (hereafter Republicans) filed the present action against County Auditor Huff. The complaint sought injunctive relief against Huff's substituting any name for Walgren's name on the ballot until he is formally convicted and thus disqualified from running for office. It also sought a declaratory judgment that Walgren would not be disqualified until the judgment and sentence had been entered in the federal case.

A hearing was held on Friday, October 17, 1980, before visiting judge Frank D. Howard. Based on various affidavits and memoranda submitted by the parties, Judge Howard entered an order agreeing with the Republicans' position. He restrained Huff from distributing any absentee ballots or preparing or distributing any regular ballots for the November 4, 1980, election with any name other than Walgren's as the 23rd legislative district Democratic nominee for State Senate.

Auditor Huff sought immediate review by this court advising the court that ballot printing schedules would require a decision at the earliest possible time. Accordingly, we heard oral argument on Tuesday, October 21, 1980; on Wednesday, October 22, 1980, we entered an order affirming the judgment of Judge Howard and ordering Huff to place the name of Gordon Walgren on the ballot for the November 4, 1980, general election.

At the outset we wish to emphasize several points on which the parties appear to agree. First, it is clear that any attempt by Walgren to voluntarily withdraw from the elec-

tion can have no legal effect. The only statutory provision permitting withdrawal is RCW 29.18.030, which provides in part that

Any candidate may in writing withdraw his declaration at any time to and including the first Wednesday after the last day allowed for filing declarations of candidacy.

This period has long since passed. Second, the authority granted to election officials to place a new name upon the ballot arises only when the candidate or nominee is dead or disqualified. RCW 29.18.160 states, in part:

A vacancy caused by the death or disqualification of any candidate or nominee of a major or minor political party may be filled at any time up to and including the day prior to the election for that position.

Thus, the question arises whether Walgren has been "disqualified" as that term is used in the statute.

Third, a person is qualified to be a state legislator if he or she is a United States citizen and a qualified voter in the district. Const. art. 2, § 7. Walgren is a citizen and will likewise remain a qualified voter unless he is convicted of an "infamous crime", *i.e.,* a crime punishable by death or imprisonment in the penitentiary. Const. art. 6, § 3; RCW 29.01.080. In addition, RCW 9.92.120 provides that

The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall *disqualify him from ever afterward holding any public office in this state.*

(Italics ours.) Walgren meets all of the constitutional requirements for eligibility to the legislature. If he is convicted of the charges now pending against him, he will be disqualified as a voter and thus disqualified as a legislator under Const. art. 6, § 3, RCW 29.01.080, and RCW 9.92.120. The question to be decided, therefore, is whether Walgren has been "convicted" when a jury verdict has been returned against him, but the trial court's action on postverdict motions and entry of judgment remain.

■ There is no case in Washington which clearly decides when a "conviction" occurs for the purpose of disqualifying a person from holding public office. Certainly this court has held that the word "conviction" may have different meanings in different situations. For example, criminal law consequences ordinarily do not flow from a jury verdict standing by itself; in order for a defendant to be sentenced or to have the right to appeal, there must be formal entry of a judgment. *Matsen v. Kaiser*, 74 Wn.2d 231, 234, 443 P.2d 843 (1968); RAP 2.2(a)(1); RAP 5.2(a). On the other hand, a jury verdict alone does qualify as a prior conviction for the purpose of impeaching a witness. *State v. Herman*, 93 Wn.2d 590, 611 P.2d 748 (1980). In fact, this court has said:

> Thus, the word *conviction* in criminal statutes has more than one meaning; it may mean a finding of guilt in one situation—as in a verdict or plea of guilty—or in other circumstances and in a different context may mean a formal finding or declaration of guilt—as in a judgment and sentence. *State ex rel. Brown v. Superior Court*, 79 Wash. 570, 140 Pac. 555 (1914).

*Matsen*, at 236.

The Republicans call our attention to several Washington cases which they claim support their view that there is no conviction for the purpose of disqualification from public office until there has been formal entry of judgment and sentence. However, none of those cases addresses the central problem of this case. For example, in *In re Simmons*, 65 Wn.2d 88, 395 P.2d 1013 (1964), the court was not deciding when the conviction occurred. Rather, the issue went to the merits of Simmons' claim that he should not be disbarred.

Similarly, in *State ex rel. Zempel v. Twitchell*, 59 Wn.2d 419, 367 P.2d 985 (1962), the sheriff of Snohomish County sought to avoid a decree arising out of a quo warranto proceeding to oust him from office. We upheld the ouster, making it clear that the office had become vacant and forfeit upon conviction. The court was not presented with the

question of when conviction occurred. Rather, the petitioner in that case merely challenged the authority of the county commissioners to declare his office vacated and also raised the issue whether he had in fact violated his official oath. *Twitchell,* at 422–23.

In *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P.2d 1046 (1939), the issue was whether the official had actually been guilty of a crime for which he could be disqualified, not whether the date of conviction was in fact the day of entry of judgment and sentence. In *State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P.2d 245, 106 A.L.R. 640 (1936), the actual issue was the reinstatement to office after reversal of the conviction on appeal.

*Matsen* is perhaps the most helpful Washington case in determining when a conviction has occurred. The Klickitat County Sheriff had resigned from office in 1961. In 1963, Sheriff Kaiser entered a plea of guilty to the felony of misappropriating public records. The trial court's order accepting the plea sentenced Kaiser to 6 months' probation, but further provided that if he completed the probationary sentence successfully, he could petition to withdraw his guilty plea and the court might then dismiss the information. Such dismissal would release him "from all penalties and disabilities resulting from [the] offense". *Matsen,* at 233. Kaiser was successful in obtaining a dismissal, and in 1966 he was again elected sheriff. A voter then brought a suit claiming that the sheriff had been convicted, thus disqualifying him from holding office within the meaning of RCW 9.92.120.

Although none of the three opinions filed in *Matsen* attracted the votes of a majority of the court, there is agreement at least that *the entry of a judgment and sentence* after a guilty plea constitutes a conviction warranting disqualification from office. *Matsen,* at 235. The majority opinion, signed by only two justices, appears to hold unequivocally that a judgment is required, but this result is not seconded by the 4–person concurrence or the 3–person dissenting opinion.

Other jurisdictions construing "conviction" in disqualification cases have split on the question at issue here. *See* Annot., *What Constitutes Conviction Within Statutory or Constitutional Provision Making Conviction of Crime Ground of Disqualification For, Removal From, or Vacancy In, Public Office,* 71 A.L.R.2d 593, 597 (1960). Even fewer cases have considered the effect of posttrial motions on the operation of disqualification statutes or constitutional provisions. 71 A.L.R.2d, at 599.

In a leading case, the New York Court of Appeals in *People v. Fabian,* 192 N.Y. 443, 85 N.E. 672 (1908), construed a provision excluding persons from voting who were "convicted of bribery or of any infamous crime", *Fabian,* at 446, and concluded that it was unreasonable to disenfranchise a person before a judgment had been entered. This rule has recently been applied in *Keogh v. Wagner,* 20 App. Div. 2d 380, 247 N.Y.S.2d 269 (1964), *aff'd,* 15 N.Y.2d 569, 203 N.E.2d 298, 254 N.Y.S.2d 833 (1964).

Courts in both Oregon and California have likewise recently held that where civil penalties and disabilities are involved, a conviction can be said to have taken place only after a determination of guilt and a pronouncement of the judgment of the court. In *Vasquez v. Courtney,* 272 Ore. 477, 537 P.2d 536 (1975), the issue was whether the appellant had been convicted of a felony which would result in the suspension of certain civil liberties pursuant to an Oregon statute. In concluding there had been no such conviction because there had been no adjudication of guilt by a court, the Oregon Supreme Court explained:

> Civil disabilities are considered penal in nature and are strictly construed. . . . Where civil penalties and disabilities are involved as in the instant case, a large majority of jurisdictions accept the technical meaning of "conviction" and hold that conviction takes place only after a determination of guilt and a pronouncement of the judgment of the court.

(Citations omitted.) *Vasquez,* at 480.

Similarly, in a case involving forfeiture of public office, the California Court of Appeals has stated:

> We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. . . . Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . .
>
> . . .
> . . . Where, as here, a civil disability flows as a consequence of the "conviction," the majority and better rule is to require the entry of judgment.

*Helena Rubenstein Int'l v. Younger,* 71 Cal. App. 3d 406, 418–21, 139 Cal. Rptr. 473 (1977).

In addition, the Supreme Court of Delaware in a well reasoned opinion has recently held that, where a constitutional provision creates a disability of citizenship on account of conviction of a felony,

> the word is to be construed in its narrow sense: it consists of more than a verdict or a plea of guilty; it refers to a final judgment of conviction consisting of the adjudication of guilt by plea or verdict followed by the imposition of sentence.

*Slawik v. Folsom,* 410 A.2d 512, 515 (Del. 1979), quoting from *Fonville v. McLaughlin,* 270 A.2d 529 (Del. 1970).

From this review of our own cases and cases in other jurisdictions, we are persuaded that, for the purpose of disqualification from public office following a verdict of guilty, a conviction has not been completed until a court has entered judgment and sentence. As we held in *State ex rel. Zempel v. Twitchell, supra,* the need for public trust and confidence in public officers may require removal prior to the completion of the appellate process. But it is also important that a public officer, especially one elected by the people, not be permanently removed from office with undue haste, at least before he or she has had a full day in court. Particularly where, as here, Walgren continues to contest his guilt by the filing of posttrial motions, we hesitate to

declare a forfeiture of office before the proceedings at the trial court have run their course. As we have noted, if a judgment of guilty is entered, Walgren will lose not only his right to be the Democratic Party's nominee, but also his rights to vote and to continue to hold his Senate seat until the end of the term. Const. art. 6, § 3; RCW 9.92.120. *See also State ex rel. O'Connell v. Dubuque,* 68 Wn.2d 553, 413 P.2d 972 (1966).

Accordingly, we hold that Gordon Walgren cannot be relieved of his office, his right to vote, or his position on his party's ticket until the trial court enters a judgment and sentence confirming the jury's verdict in the federal case. The judgment of the Kitsap County Superior Court is affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.