IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AUSTIN CORNELIUS, an individual,<br><br>            Appellant,<br><br>      v.<br><br>WASHINGTON STATE UNIVERSITY, a public university,<br><br>            Respondent,<br><br>ETA OF ALPHA KAPPA LAMBDA, a Washington corporation d/b/a ALPHA KAPPA LAMBDA, and ALPHA KAPPA LAMBDA, a national organization, MAXWELL H. ZIMMERMAN; JOHN STACK; KYLE THOMAS CATEY; MICHAEL GRAY; JOHN ZENDER; ADAM TAPLETT; DEREK ANDREW THIEL; AND DOES 1 THROUGH 15,[†]<br><br>            Defendants. | No. 84657-4-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DÍAZ, J. — Austin Cornelius brought suit against Washington State University (WSU) for hazing he alleges largely occurred at an off campus fraternity. A superior court granted summary judgment in favor of WSU, holding it owed

---

[†] The appellant settled his claims against both Alpha Kappa Lambda's national organization and its Washington State University chapter in October 2022. The court also dismissed all claims against the remaining defendants by June 2022. Thus, only Austin Cornelius and Washington State University are participating in this appeal.

Cornelius no duty to protect him from such hazing and dismissing his claims. Cornelius now argues Washington's anti-hazing statutes and regulations create an implied private right of action sounding in tort, i.e., permitting him to sue WSU for negligence. Cornelius also argues WSU owed him a common law duty of care under Restatement (Second) of Torts § 344 (Am. Law Inst. 1965). Under either theory, we hold Cornelius fails to establish a genuine issue of material fact as to whether WSU owed him the duties he claims it breached, i.e., to monitor and prevent hazing. As such, we affirm the superior court's order of summary judgment in favor of WSU.

## I.      BACKGROUND[1]

In August 2017, Cornelius enrolled at WSU as a freshman. Soon after, Cornelius sought to join or "pledge" Alpha Kappa Lambda fraternity's WSU chapter (the AKL Chapter), whose house was located off campus, though "physically proximate" to campus, in an area commonly known as Greek row.

Cornelius claims members of the AKL Chapter hazed him in the months that followed. For example, he claims AKL members once forced him to drink so much alcohol that he was hospitalized. These incidents of excessive drinking and other types of hazing almost exclusively occurred off campus, such as at parks or the AKL Chapter's house. As to the only incident(s) that occurred on campus, he claims members of the AKL Chapter forced pledges to march from "study tables"

---

[1] The superior court resolved this matter on summary judgment. Thus, the facts herein are set forth in the light most favorable to Cornelius, the non-moving party, based on the evidence he submitted on summary judgment. See Blue Diamond Grp., Inc. v. KB Seattle 1, Inc., 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

2

at a WSU library to the AKL Chapter house, there to be hazed.

In October 2017, Cornelius reported this hazing to WSU. After an investigation, WSU revoked its recognition of the AKL Chapter in December 2017 until at least May 2020.

In July 2020, Cornelius filed suit in the King County Superior Court. Cornelius brought claims of negligence against inter alia WSU, asserting it "owes a duty of care to the students who attend its University." In September 2022, WSU moved for summary judgment. WSU primarily argued it "did not owe any legal duty to protect Plaintiff [Cornelius] from the illegal conduct of adults at a private, off campus establishment." In October 2022, the superior court granted summary judgment for WSU.

Cornelius timely appealed and, in March 2023, this court stayed proceedings pending our Supreme Court's decision in Barlow v. State, 2 Wn.3d 583, 540 P.3d 783 (2024). After this court lifted its stay, Cornelius submitted an amended brief.

## II.    ANALYSIS

Cornelius asserts claims of both statutory and common law negligence, whose duty of care arises under RCW 28B.10.900-.903 and WAC 504-26-206, and Restatement (Second) of Torts § 344, respectively.[2]

---

[2] In his original appellate brief, Cornelius asserted claims based on Restatement (Second) of Torts § 315(b) (Am. Law Inst. 2012) and Restatement (Third) of Torts Liability for Physical and Emotional Harm § 40 (Am. Law Inst. 1965), alleging a special relationship between students and WSU. However, his amended brief omitted his earlier § 315(b) and § 40 arguments. At oral argument, Cornelius' counsel also conceded that he could not "see a circumstance in which [Restatement (Second) of Torts §] 315 applies" after Barlow. Wash. Ct. of Appeals

As a preliminary note, Cornelius claims that Washington's anti-hazing laws, RCW 28B.10.900-.903 and WAC 504-26-206, create an implied cause of action sounding in tort, specifically permitting the negligence claim he here brings. As to the duty element of that claim, we understand Cornelius' claim to be, as stated in his complaint, that WSU owed him a duty of care to inter alia "vigorously supervise, monitor, train and enforce anti-hazing University policies and procedures, as well as state statues." As more succinctly stated in his appellate briefs, he claims WSU breached this statutory duty of care to Cornelius by failing to "prevent" hazing. In other words, even allowing that some implied cause of action may arise statutorily, the specific duty Cornelius claims he is owed is a duty to prophylactically monitor and prevent hazing.

In an opinion filed contemporaneously with the present one, this court rejected a similar argument, holding that:

> former RCW 28B.10.901 provides a specific remedy against individuals who conspire to haze others (criminal punishment), against any organization, association, or student living group that knowingly permits hazing (strict civil liability), and against the directors of such entities (individual liability). But the antihazing statutes do not provide a tort remedy against a university that fails to prevent its students from being hazed. *Nor does the legislative history suggest such a remedy.* In short, the provision of specific remedies for acts of hazing is evidence that the legislature intended to limit tort remedies to those who actually participated in hazing—not universities.

---

oral argument, Austin Cornelius v. Wash. State Univ., No. 84657-4-I (November 1, 2024), at 10 min., 20 sec. through 10 min., 30 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024111101/?eventID=2024111101. We consider those arguments abandoned and will discuss them no further. Blue Spirits Distilling, LLC v. Liquor & Cannabis Bd., 15 Wn. App. 2d 779, 794, 478 P.3d 153 (2020).

Martinez v. Wash. State Univ., No. 83853-9, slip op. at 25-26 (Wash. Ct. App. January 21, 2025) (emphasis added).

As such, we need and will only address whether WSU owed Cornelius a duty under Restatement (Second) of Torts § 344. See Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) ("'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'") (quoting Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000)). We hold, on the facts Cornelius proffers here, WSU owed him no such duty under Restatement (Second) of Torts § 344.

A.     Summary Judgment Standard

In an appeal from summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

To determine whether there is a genuine issue of material fact, "[w]e consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party," here Cornelius. Marquis v. City of Spokane, 130 Wn.2d 97, 105, 922 P.2d 43 (1996); Ranger Ins. Co., 164 Wn.2d at 552. The "'function of a summary judgment proceeding, or a judgment on the pleadings is to determine whether or not a genuine issue of fact exists, not to determine issues

of fact.'" Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 217, 522 P.3d 80 (2022) (quoting State ex rel. Zempel v. Twitchell, 59 Wn.2d 419, 425, 367 P.2d 985 (1962)). Like the superior court, we "may not weigh the evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact." Id.

Summary judgment is appropriate for resolving pure questions of law as well. Solnicka v. Safeco Ins. Co. of Ill., 93 Wn. App. 531, 533, 969 P.2d 124 (1999). Finally, "[w]e may affirm a trial court's decision on a motion for summary judgment on any ground supported by the record." Port of Anacortes v. Frontier Indus., Inc., 9 Wn. App. 2d 885, 892, 447 P.3d 215 (2019).

B.     Duty of Care Under *Restatement (Second) of Torts* § 344[3]

  1.  *Barlow* and *Restatement (Second) of Torts* § 344

"'In all negligence actions the plaintiff must prove the defendant owed the plaintiff a duty of care.'" Washburn v. City of Federal Way, 169 Wn. App. 588, 610, 283 P.3d 567 (2012) (quoting Donaldson v. City of Seattle, 65 Wn. App. 661, 666, 831 P.2d 1098 (1992)). "The determination of whether a duty exists is a question of law, which is reviewed de novo." Barlow, 2 Wn.3d at 589. Even so, a "duty

---

[3] WSU claims that Cornelius "failed to preserve this as an issue" as he "failed to make a Restatement-based premises liability claim to the trial court about the on-campus marches." While that may be strictly true, "a statute not addressed below but pertinent to the substantive issues which were raised below may be considered for the first time on appeal." Bennett v. Hardy 113 Wn.2d 912, 918, 784 P.2d 507 (1990). Both Cornelius and WSU referenced Restatement (Second) of Torts § 344 in arguments before the superior court, albeit for different uses. Regardless, as the issue is fully and competently briefed, we choose to exercise our discretion to consider whether WSU owed Cornelius a duty under Restatement (Second) of Torts § 344. RAP 2.5(a) ("The appellate court *may* refuse to review any claim of error which was not raised in the trial court.") (emphasis added).

arises from the facts presented," meaning "a challenge to whether the defendant owes a duty to a plaintiff sometimes requires a determination whether facts can be proved that give rise to the alleged duty. In such cases, the issue of duty does not present a pure question of law." Washburn, 169 Wn. App. at 610-611.

Our Supreme Court in Barlow addressed two questions certified by the United States Court of Appeals for the Ninth Circuit. 2 Wn.3d at 586-87. The principles of Restatement (Second) of Torts § 344 guided the Court's determination of those questions. Id. at 590. That section states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Id. (quoting RESTATEMENT (SECOND) OF TORTS § 344). Stated generally, our Supreme Court held that Restatement (Second) of Torts § 344 is an exception to the "general rule [] that people and businesses have no duty to aid or protect others from harm." Id. at 589.

More specifically, the first question the Ninth Circuit certified was whether Washington "recognizes a special relationship between a university and its students, giving rise to a duty to use reasonable care to protect students from foreseeable injury at the hands of other students." Id. at 586-87. Our Supreme Court answered affirmatively, holding that "that relationship is defined and

7

anchored in the common law as provided in Restatement (Second) of Torts § 344." Id. at 587.

The second question the Ninth Circuit certified was "what is the measure and scope of that duty?" Id. Our Supreme Court answered that, as universities have "no ability to control off-campus, non-school-sponsored interactions . . ., the duty does not extend to the choices or activities under a student's control." Id. at 597. In turn, the Court held that a "university's duty is limited to where a student is *on campus for school related purposes* or *participating in a school activity*." Id. (emphasis added). Covered school purposes and activities include "university sponsored and controlled events." Id. at 586.

Our Supreme Court further held that "foreseeability does not establish duty . . . unless a special relationship exists with the victim or the perpetrator." Id. at 595. There, it was immaterial that "WSU knew about [the perpetrator's] past behavior" from prior misconduct. Id. Instead, "[o]ur cases have recognized such a special relationship in only limited circumstances, none of which apply in the situation presented [t]here, at an off-campus party." Id.

In short, universities and colleges do owe a duty of care to their students under Restatement (Second) of Torts § 344, but the duty is "limited to where a student is on campus for school related purposes *or* participating in a school activity." Id. at 597 (emphasis added).

2. Applying *Barlow* to Cornelius' Theory and Facts He Proffers

Cornelius argues, even in light of Barlow, that WSU owed him a duty of care under Restatement (Second) of Torts § 344 to have monitored and prevented the

8

hazing he experienced both off campus at the AKL Chapter's house and on campus when he was forced to march from "'study tables'" at a WSU library to the AKL Chapter's house to be further hazed. We address each in turn.

### a. AKL Chapter House

Cornelius offers the following facts to establish that the hazing at the AKL Chapter's house were university sponsored and controlled events, triggering a duty of care under Barlow:

  i. "WSU students are . . . subject to individual discipline under the Student Code of Conduct for 'off campus' activity at a Greek Row fraternity or sorority."
 ii. AKL Chapter's "troubled history at WSU, having been previously suspended from the campus in 2007 due to 'drug and alcohol allegations against it.'" WSU's sanctions included "loss of recognition for a period of at least five years."
iii. Broader disciplinary issues within WSU's "Greek Row," including that "*18 out of 18* Greek Row chapters had received sanctions for alcohol violations in the past year."
 iv. Greek Row and the AKL Chapter being "physically proximate to buildings on WSU Pullman's campus."
  v. "WSU has a staff dedicated to promoting and sustaining fraternities and sororities on campus—the Center for Fraternity and Sorority Life ('CFSL')."
 vi. "WSU aggressively promotes Greek life and encourages students and prospective students to join fraternities and sororities" by citing "higher graduate rates, higher acceptance rates into graduate programs, more and better job opportunities through professional networking systems, and other social and academic benefits."
vii. Cornelius' testimony that WSU's "'massive presentations'" and "'tour[s of] every fraternity house'" during "'rush week'" led him to join the AKL Chapter. These tours included assurances by members of the AKL Chapter that "'there's no hazing'" and that "'[t]here will be no hazing. We are nontolerant. We don't have a problem with hazing. There is no hazing.'"[4]

---

[4] Cornelius also cites to a "Relationship Agreement" between the AKL Chapter and WSU. Amended Br. of App. at 5-7 (citing CP 1802, 1806-10). However, Cornelius offers little, if any, substantive analysis beyond listing the contents of this

In sum, Cornelius argues "WSU has specifically exerted significant control over AKL." And he avers that his "symbiotic relationship . . . establishes that the Chapter was a school-sponsored activity" under Barlow and Restatement (Second) of Torts § 344.[5] We disagree.

Our Supreme Court in Barlow rejected claims based on facts similar to the first seven sets of facts enumerated above. The Court in Barlow rejected the argument, as in bullet (i), that codes of conduct which address off campus conduct establish a university's duty under Restatement (Second) § 344. 2 Wn.3d at 597. The Court explained that the "code of conduct does not create control of students' behavior in a preventative way," making it "irrelevant to establishment of a duty." Id. As such, Cornelius' reliance on WSU's code of conduct is inapposite for establishing that the activities at a fraternity house were university sponsored and controlled, thereby creating a duty.

Next, contrary to bullets (ii) and (iii), our Supreme Court in Barlow stated

_____

agreement and generally citing WAC 504-26-206(3)(b). Amended Br. of App. at 5-7.

[5] Cornelius also cites to former WAC 504-24-030 (2020) as a "regulation, that, at the time, provided that you had an exception from the mandatory freshman on campus residence requirement for fraternities." Wash. Ct. of Appeals oral argument, supra at 5 min., 39 sec. through 5 min., 49 sec. Indeed, in 2023, the regulation was amended to strike the definition of "[u]niversity-recognized housing" to include "university approved fraternities" and that living in a fraternity house satisfied the requirement that all first-year students live in officially recognized" housing. Wash. St. Reg (WSR) 23-07-069, § 504-24-030 (Apr. 13, 2023). Still, Cornelius' reliance on this regulation is quickly disposed of, as our Supreme Court in Barlow rejected the argument that a university owes a duty of care to a student simply because it "is involved in aspects of student life outside of the academic sphere, such as providing basic necessities," including even "on-campus housing," let alone off campus housing, as here. 2 Wn.3d at 597.

that "foreseeability does not establish duty" because, even if a "party knows that a person may commit a crime against another, that party has no duty to act unless a special relationship exists with the *victim or the perpetrator*."  2 Wn.3d at 595 (emphasis added).  There, the Court held WSU had no duty over off campus and non-sponsored conduct even when WSU received two complaints about the same perpetrator soon before the incident.

Here, Cornelius concedes the AKL Chapter's house was off campus. Cornelius makes claims of past misconduct, which was more generalized than the plaintiff presented in Barlow.  Thus, Cornelius' reliance on the general disciplinary history of the AKL Chapter or Greek row is inapposite for establishing a duty.

Moreover, a residence's mere proximity to campus is expressly immaterial under Barlow to creating a duty, as the test is whether "a student is *on campus* for school related purposes *or* participating in a school activity."  2 Wn.3d at 597 (emphasis added).  Thus, Cornelius' assertion in bullet (iv) that the AKL Chapter's house was "physically proximate" to campus simply does not establish a duty under Barlow.

Next, and contrary to bullets (v), (vi), and (vii) and the general claim that WSU has a duty to monitor or prevent hazing because it "promotes" Greek life, the Court in Barlow held that universities do not owe a duty simply because they "provid[e] basic necessities" such as "opportunities for social interaction."  2 Wn.3d at 597.  In turn, these facts do not establish WSU had any actual power to thereby control students' actions and sponsored a fraternity's activities at a private off campus residence at the time of the hazing, as Barlow requires, even if a jury found

WSU encouraged participation in Greek life. Id.

In short, none of the facts Cornelius proffers creates a genuine issue of material fact that WSU controlled and sponsored the abusive students' off campus interactions with Cornelius. As the Court in Barlow explained, "a university simply has no power to dictate students' movements off campus and away from the oversight of campus security and administration." 2 Wn.3d at 597. Thus, "the duty does not extend to the choices or activities under a student's control." Id.

Therefore, we hold that summary judgment was proper as this portion of Cornelius' claim. His proffered facts, even if viewed in a light most favorable to him, fail to establish a genuine issue of material fact that WSU owed a duty of care under Restatement (Second) § 344 to monitor or prevent potential abuse by students off campus. CR 56(c); Ranger Ins. Co., 164 Wn.2d at 552; Martinez, No. 83853-9, slip op. at 35-36 (similarly holding that WSU owed no duty under Restatement (Second) § 344 to protect a student from hazing at an off campus fraternity).

b. Library Marches

Again, Cornelius testified that the AKL Chapter also hosted library "study tables," after which "pledges were then lined up in the middle of the library (located in the center of the WSU Pullman campus), marched back to the AKL house across campus, and hazed additionally." Specifically, during these marches, Cornelius states "he was subject to being yelled at and told to have his head down and look at the ground" and, upon entry to the house, the abuse continued

Based on these facts, Cornelius first generally argues that "WSU made its

12

facilities like the library available for the Chapter to engage in hazing," meaning "WSU owed [him] a <u>Restatement</u> § 344 duty of care arising out of the use of its premises by the Chapter."

Indeed, a jury could find that the marches were literally "on campus," in the sense the abusers marched their pledges across campus from the library to the AKL Chapter's off campus house. But, for a court to send the claim to a jury, Cornelius would also have to create a genuine issue of material fact that this action occurred "for school related purposes." <u>Barlow</u>, 2 Wn.3d at 597.

Here, there is no evidence in the record these "study tables" or marches were for "school related purposes," as that term is commonly understood. <u>Id.</u> Webster's defines "purpose" as "something one sets before himself as an object to be attained: an end or aim to be kept in view." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1847 (1993). In other words, Cornelius has established, as he must, no connection between the marches and a school related aim, object, or end. <u>Welch v. Brand Insulations, Inc.</u>, 27 Wn. App. 2d 110, 531 P.3d 265 (2023) (explaining the burden on the nonmoving party). It is unclear what Cornelius means by a university "making a facility available," but there is nothing in the record that would permit us to hold that WSU's school library was created for the purpose or aim of hosting marches to a fraternity house.[6] In turn, Cornelius

---

[6] At oral argument, this court asked Cornelius' counsel to identify his client's best evidence that the library marches were for "school related purposes." Wash. Ct. of Appeals oral argument, <u>supra</u> at 4 min., 9 sec. through 4 min., 13 sec. Cornelius primarily reiterated evidence discussed above, from the house's proximity to campus, WSU promotion of Greek life, recognition agreement, to past incidents and discipline within the AKL Chapter and Greek row. <u>Id.</u> at 4 min., 13 sec. through 5 min., 16 sec. (proximity, WSU promotion), 6 min., 3 sec. through 6 min., 40 sec.

has failed to establish a genuine issue of material fact as no reasonable juror could conclude the study hall event or marches were in furtherance of a school related purpose.  Ranger Ins. Co., 164 Wn.2d at 552.

Even assuming arguendo that the marches could be characterized as on campus for some school related purpose under Barlow (e.g., as some generalized support of the Greek system WSU benefits from), Cornelius still failed to establish foreseeability under comment f of Restatement (Second) of Torts § 344.  As our Supreme Court discussed in McKown v. Simon Prop. Grp., Inc., comment f of Restatement (Second) of Torts § 344 "provides that[,] to the extent that a duty is owed, it is a limited duty based on foreseeability," meaning "foreseeability is not merely used to determine the scope of a duty already owed, it is a factor in determining whether the duty is owed in the first place."  182 Wn.2d 752, 768, 344 P.3d 661 (2015).

Comment f to Restatement (Second) of Torts § 344 further explains that a "'possessor . . . is ordinarily under no duty to exercise  any care until he knows or has reason to know that the acts of the third person *are occurring, or are about to occur*.'"  Id. (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 344 cmt. f).  The possessor "'may, however, know or have reason to *know, from past experience*, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor'" based on the possessor's "'*place or character of his business*, or *his past experience*.'"  Id.

_____

(agreement), 8 min., 5 sec. through 8 min., 50 sec. (incidents).  For reasons similar to those discussed above, none of that evidence creates a genuine issue of material fact that the march advanced a school related purpose.

14

(emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 344 cmt. f).

Cornelius offers numerous facts to establish the foreseeability of, or WSU's knowledge of, the library marches, including:

(a) Again, the past incidents or disciplinary issues within WSU's broader Greek system, including fatal hazing incidents in other fraternities and the aforementioned statistic that 18 out of 18 Greek Row chapters were sanctioned for alcohol violations in the past year.

(b) Again, the AKL Chapter's past-disciplinary issues, such as the 2007 revocation of its recognition.

(c) The declaration from Dr. Norman Pollard, a putative expert witness retained by Cornelius.

(d) The unsupported claim that "cross campus" and other unusual marches occurred "*for years*" and "would be noteworthy to University staff."

(e) Also, without further citation to the record, the claim that "WSU library staff were aware the Chapter used its facilities for a 'study table' and it was the starting point of the march."

(f) The fact that a WSU campus map demonstrates the distance between the WSU library and the AKL Chapter house was "considerable."

Even viewing these assertions in a light most favorable to Cornelius, we hold they are insufficient to create a genuine issue of material fact on foreseeability. CR 56(c); Ranger Ins. Co., 164 Wn.2d at 552.

Our Supreme Court observed that even in the context of criminal acts, if the act "that injures the plaintiff is not sufficiently similar in nature and location to the prior act(s) of violence, sufficiently close in time to the act in question, and sufficiently numerous, then the act is likely unforeseeable as a matter of law under the prior similar incidents test." McKown, 182 Wn.2d at 772.

Here, the pasts incidents at the AKL Chapter house in 2007 and on Greek row generally, summarized in bullets (a) and (b), are not "sufficiently similar" or "close in time" to the marches to put WSU on notice. Id.

15

Further, Cornelius' reliance on Dr. Pollard's testimony, in bullet (c), is misplaced. Dr. Pollard states he has "special expertise in the field of hazing and risk management." His declaration further claims WSU "knew, or at the very least should have known, that 18- to 22-year old fraternity members . . . could not be entrusted with the health and safety of incoming members, and were not adequately trained." However, the declaration does not specifically discuss the AKL Chapter, the library marches, or WSU's knowledge of either, directly or based on any specific past experiences. Moreover, the declaration provides no evidence that these specific events "are occurring, or are about to occur" or are somehow part of a history of this type of hazing on campus. Restatement (Second) of Torts § 344 cmt. f. Cornelius points to no such evidence in the record. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992) (the court is not required to search the record to locate the portions relevant to a litigant's arguments). In short, Dr. Pollard's generalized assertions are insufficient to establish foreseeability for the library marches under McKown, 182 Wn.2d at 722.

Relatedly, Cornelius' unsupported assertions within bullets (d) and (e), as well as his generalized citation to a WSU campus map in bullet (f), are insufficient as "[m]ere speculation cannot support or defeat a motion for summary judgment." Umpqua Bank v. Gunzel, 19 Wn. App. 2d 16, 34, 501 P.3d 177 (2021).

Thus, even if the library marches arguendo were done to advance some school purpose, Cornelius still fails to establish a genuine issue of material fact as to whether the marches were foreseeable under Restatement (Second) of Torts § 344, comment f. And, thus, summary judgment was appropriate. CR 56(c);

Ranger Ins. Co., 164 Wn.2d at 552.

III.     CONCLUSION

We affirm the superior court's order granting summary judgment in favor of WSU.[7]

Díaz, J.

WE CONCUR:

Bruun, J                    Mann, J.

---

[7] Cornelius filed three statements of additional authorities.  WSU moved to strike the first two statements and filed a response to the third.  We deny WSU's motions as moot.